130 T.C. No. 5


UNITED STATES TAX COURT


JON W. AND KRISTI NELSON, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 2603-06, 2604-06,    Filed February 28, 2008.
          2605-06.


     In 2001, two farming partnerships received Federal
crop insurance proceeds relating to sugar beet crops
destroyed by excess moisture in 2001.

     <u>Held</u>:  The partnerships and the partners thereof
may not, under sec. 451(d), I.R.C., defer until 2002
reporting as income the crop insurance proceeds
received in 2001.


<u>Jon J. Jensen</u>, for petitioners.

<u>Blaine Holiday</u>, for respondent.

---

     [1] Cases of the following petitioners are consolidated
herewith:  Steven P. and Jaime Nelson, docket No. 2604-06, and
Wayne E. and Joann Nelson, docket No. 2605-06.

OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies in petitioners' 2001 Federal income taxes and penalties, as follows:

| Petitioners | Deficiency | Penalty Sec. 6662(b)(1) |
|---|---|---|
| Jon W. and Kristi Nelson | $23,707 | $4,741 |
| Steven P. and Jaime Nelson | 31,197 | 6,239 |
| Wayne E. and Joann Nelson | 23,181 | 4,636 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether two farming partnerships and the partners thereof may, under section 451(d), defer reporting as income until 2002 Federal crop insurance proceeds the partnerships received in 2001 relating to their destroyed sugar beet crops.

## Background

The facts of these cases were submitted fully stipulated under Rule 122 and are so found.

At the time the petitions were filed, petitioners resided in Minnesota.

Petitioners Jon, Steven, and Wayne Nelson are brothers, and petitioners Kristi, Jaime, and Joann Nelson are their respective wives.

Petitioners herein are partners in two related family partnerships that are engaged in the business of farming--namely, WJS Nelson, Ltd. LLP (WJS-LLP) and WJS Nelson Partnership (WJS-Partnership).

Jon, Steven, and Wayne are equal one-third partners in WJS-LLP, and Jon, Steven, Wayne, and their respective spouses are equal one-sixth partners in WJS-Partnership.

WJS-LLP raises only sugar beets while WJS-Partnership raises sugar beets and other crops.

In 2001, the sugar beet crops of WJS-LLP and of WJS-Partnership were destroyed by excess moisture. Neither partnership harvested any sugar beets in 2001, and neither partnership received any proceeds in 2001 or in later years from the sale of sugar beets the partnerships planted in 2001.

Each partnership's 2001 sugar beet crop, however, was insured against loss by Federal crop insurance, and in 2001 WJS-LLP and WJS-Partnership received $80,589 and $121,330, respectively, a total of $201,919, in Federal crop insurance proceeds relating to their sugar beet crops destroyed in 2001.

In 2001, WJS-Partnership also planted and harvested other crops.

The books and records of WJS-LLP and of WJS-Partnership were maintained and their Federal income tax returns were filed using the cash method of accounting.

Each year, however, for Federal income tax purposes income from the harvest and sale of sugar beet crops was and is reported by WJS-LLP and by WJS-Partnership not on the basis of when the partnerships sell the crops, receive the proceeds, or realize the income therefrom but rather on the basis of the following formula:  65 percent of the income realized from the sale of the sugar beet crops is reported in the year of the harvest of the crops, and the remaining 35 percent is reported in the year following the harvest.

Consistently, on information tax returns, Forms 1065, U.S. Return of Partnership Income, submitted to respondent each year, WJS-LLP and WJS-Partnership allocate among petitioners herein the income from the harvest and sale of sugar beet crops not on the basis of when the partnerships receive the proceeds or realize income from the sale of the sugar beet crops, but rather on the basis of the above formula:  namely, 65 percent in the year of harvest and 35 percent in the year following the harvest.

If WJS-LLP's and WJS-Partnership's 2001 sugar beet crops had not been destroyed and if the crops had been sold in 2001, for 2001 WJS-LLP and WJS-Partnership would have allocated to petitioners and reported to respondent a total of 65 percent of

the partnerships' income relating thereto and for 2002 a total of 35 percent of the partnerships' income relating thereto.

The parties have stipulated that the above method and percentages used by WJS-LLP and by WJS-Partnership for allocating and reporting income relating to a particular year's sugar beet crop between the year of the harvest (65 percent) and the year following the harvest (35 percent) (regardless of the year in which the crops are sold and the proceeds and income are received) are consistent with the partnerships' above cash method of accounting and with accounting and tax reporting practices within the sugar beet industry and are recognized and accepted generally by respondent. See generally sec. 451(d); sec. 1.451-6(a)(1), Income Tax Regs.; Rev. Rul. 74-145, 1974-1 C.B. 113.

Each year for Federal income tax purposes WJS-Partnership (and its individual partners) reports income from the harvest and sale of its other farm crops not on the basis of when crops are sold and the proceeds are received, but rather on the basis of similar formulas that defer a percentage of the sales proceeds and income until the following year.

Under the various formulas used by WJS-Partnership for reporting in the current year and deferring until the following year a portion of crop proceeds and income, WJS-Partnership typically defers until the following year over 50 percent of total income relating to all crops grown in the current year.

Specifically in and for 2001, WJS-LLP and WJS-Partnership did not treat as income and did not report to respondent on information returns, Forms 1065, any of the $201,919 in Federal crop insurance proceeds that were received in 2001 with regard to the sugar beet crops destroyed in 2001.

Rather, with the 2001 partnership information tax returns of WJS-LLP and of WJS-Partnership, Forms 1065, elections under section 451(d) were filed with respondent to defer reporting the entire $201,919 in Federal crop insurance proceeds received in 2001 until 2002.

Petitioners filed their respective 2001 individual joint Federal income tax returns, reporting thereon their respective amounts of 2001 WJS-LLP and WJS-Partnership income, deductions, and credits as reported by the partnerships (i.e., not reporting any of the Federal crop insurance proceeds received in 2001).

On audit of petitioners' respective individual joint Federal income tax returns for 2001, respondent treated as income for 2001 all $201,919 of the Federal crop insurance proceeds WJS-LLP and WJS-Partnership received in 2001, charged each petitioner with additional income for his or her respective allocation thereof, and determined the tax deficiencies and penalties at issue.

## Discussion

Generally, a cash method taxpayer reports income in the year of receipt. Sec. 451(a). However, under section 451(d) an exception is provided for farmers if they normally report income from the sale of crops in a year following crop production. Under the section 451(d) exception, a cash method farmer who normally reports income from the sale of his crops in the year following crop production may elect to defer treating as income crop insurance proceeds received in a year until a following year. Section 451(d) provides as follows:

> SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION.
>
> (d) Special Rule for Crop Insurance Proceeds or Disaster Payments.--In the case of insurance proceeds received as a result of destruction or damage to crops, a taxpayer reporting on the cash receipts and disbursements method of accounting may elect to include such proceeds in income for the taxable year following the taxable year of destruction or damage, if he establishes that, under his practice, income from such crops would have been reported in a following taxable year. * * * An election under this subsection for any taxable year shall be made at such time and in such manner as the Secretary prescribes.

Although the above statute does not expressly provide that under the farmer's normal tax reporting for crop income "all" (or some particular percentage) of a farmer's crop income must be deferred to a following year in order to qualify for the section 451(d) 1-year deferral of crop insurance proceeds received, the

regulations under section 451(d) do use the definite article and refer to "the" income from crops. Section 1.451-6(a)(1), Income Tax Regs., provides in relevant part as follows:

> § 1.451-6. Election to include crop insurance proceeds in gross income in the taxable year following the taxable year of destruction or damage.--(a) _In general_.--(1) For taxable years ending after December 30, 1969, a taxpayer reporting gross income on the cash receipts and disbursements method of accounting may elect to include insurance proceeds received as a result of the destruction of, or damage to, crops in gross income for the taxable year following the taxable year of the destruction or damage, if the taxpayer establishes that, under the taxpayer's normal business practice, <u>the</u> <u>income</u> from those crops would have been included in gross income for any taxable year following the taxable year of the destruction or damage. * * * [Emphasis added.]

Similarly, with regard to the time and manner of making an election to defer crop insurance proceeds, section 1.451-6(b)(1)(iii), Income Tax Regs., uses the definite article and refers to "the" income.[2]

---

[2] Sec. 1.451-6(b)(1), Income Tax Regs., provides in part as follows:

> § 1.451-6. Election to include crop insurance proceeds in gross income in the taxable year following the taxable year of destruction or damage.--
>
>      *     *     *     *     *     *     *
>
> (b)(1) <u>Time and manner of making election</u>.--The election to include in gross income insurance proceeds received as a result of destruction of, or damage to, the taxpayer's crops in the taxable year following the taxable year of such destruction or damage shall be

(continued...)

The stated legislative purpose for the deferral of crop insurance proceeds under section 451(d) was to allow farmers, in and for the year they incur crop damage and receive insurance proceeds, to avoid having to pay Federal income tax on 2 years' worth of income relating to their crops (namely, income deferred under their normal practice from the prior year into the current year and also crop insurance proceeds received in the current

---

[2](...continued)
made by means of a statement attached to the taxpayer's return (or an amended return) for the taxable year of destruction or damage. The statement shall include the name and address of the taxpayer (or his duly authorized representative), and shall set forth the following information:

    (i) A declaration that the taxpayer is making an election under section 451(d) and this section;

    (ii) Identification of the specific crop or crops destroyed or damaged;

    (iii) A declaration that under the taxpayer's normal business practice <u>the</u> income derived from the crops which were destroyed or damaged would have been included in his gross income for a taxable year following the taxable year of such destruction or damage;

    (iv) The cause of destruction or damage of crops and the date or dates on which such destruction or damage occurred;

    (v) The total amount of payments received from insurance carriers, itemized with respect to each specific crop and with respect to the date each payment was received;

    (vi) The name(s) of the insurance carrier or carriers from whom payments were received. [Emphasis added.]

year). The 1969 Senate committee report explaining the policy underlying section 451(d) makes it clear that Congress's intent was to provide a deferral of insurance proceeds in those situations where the farmers were not receiving (and therefore, under their cash method of accounting, were not reporting) any income from current year crops until the following year when the crops were sold. S. Rept. 91-552, at 106-107 (1969), 1969-3 C.B. 423, 492; see also H. Conf. Rept. 91-782, at 299 (1969), 1969-3 C.B. 644, 657.

The Senate report provides the following explanation:

> General reasons for change.--The requirement of present law that crop insurance proceeds must be included in income for the year of receipt in the case of taxpayers using a cash method of accounting results in a hardship where it is the normal practice of the farmer to sell his crop in the year following that in which it is raised. In this case the farmer normally would include the proceeds from the sale of the prior year's crop in income for the taxable year and would include the proceeds from the sale of the current year's crop in income for the following year when the crop is sold. If, however, the current year's crop is damaged or destroyed, for instance by hail or windstorm and the farmer receives insurance proceeds to cover the loss, he must include the insurance proceeds in income for the current year. Thus, two years income must be reported in the current year as a result of an occurrence over which the farmer has no control. [S. Rept. 91-552, supra at 106-107, 1969-3 C.B. at 492.]

As stated, under normal practice WJS-LLP, WJS-Partnership, and petitioners did not report "the" income from the current year's sugar beet crops in the following year. Rather, WJS-LLP,

WJS-Partnership, and petitioners reported 65 percent of the income relating to the current year's sugar beet crops in the current year and only 35 percent thereof in the following year. Accordingly, on the basis of the above-stated rationale for the section 451(d) deferral of insurance proceeds, it would make more sense for WJS-LLP and WJS-Partnership to be required to report the insurance proceeds they received in 2001 in the year in which most (namely, 65 percent) of the income from the crops would have been reported had the crops not been damaged (i.e., 2001).

In Rev. Rul. 74-145, 1974-1 C.B. 113, respondent concluded that the deferral of recognition of crop insurance proceeds under section 451(d) was available to a farmer who, under his normal method of accounting for crop income, deferred to the following year not all but more than 50 percent of his crop income, a percentage which in the ruling respondent referred to as a "substantial portion" of the farmer's annual crop income.

Also, the above revenue ruling concluded, consistently with section 1.451-6(a)(2), Income Tax Regs., that a farmer who receives in the current year crop insurance proceeds (that would qualify for deferral under section 451(d)) relating to two or more damaged crops, but who makes a section 451(d) deferral election with respect to only a "portion" of the insurance proceeds received, must defer and report in the following year all of the insurance proceeds attributable to the crops

constituting a single trade or business for the farmer.

Sec. 1.451-6(a)(2), Income Tax Regs.[3]

The referenced regulations and the above ruling would appear

to preclude prorating of the insurance proceeds which WJS-LLP and

---

[3] Sec. 1.451-6(a)(2), Income Tax Regs., provides as follow:

§. 1.451-6. Election to include crop insurance
proceeds in gross income in the taxable year following
the taxable year of destruction or damage.--

\*    \*    \*    \*    \*    \*    \*

(2) In the case of a taxpayer who receives insurance
proceeds as a result of the destruction of, or damage
to two or more specific crops, if such proceeds may,
under section 451(d) or this section, be included in
gross income for the taxable year following the taxable
year of such destruction or damage, and if such
taxpayer makes an election under section 451(d) and
this section with respect to any portion of such
proceeds, then such election will be deemed to cover
all of such proceeds which are attributable to crops
representing a single trade or business under section
446(d). A separate election must be made with respect
to insurance proceeds attributable to each crop which
represents a separate trade or business under section
446(d).

We note that this regulation does not help petitioners
(particularly WJS-Partnership, which does harvest each year more
than one crop and which does defer to the following year most of
its total income from all its crops), and petitioners do not rely
on it, because of the predicate in the regulation that it
pertains only to crop insurance proceeds received that first are
qualified for the sec. 451(d) deferral. Because, per our
holding, the crop insurance proceeds at issue do not qualify for
that deferral, the mandate of the regulation (that "all"
insurance proceeds received relating to a single trade or
business of a taxpayer be deferred until the following year) does
not apply.

WJS-Partnership received between the current year (65 percent) and the following year (35 percent).

Respondent also takes the position, relying on Rev. Rul. 74-145, supra, that a section 451(d) deferral to 2002 of the $201,919 crop insurance proceeds which WJS-LLP and WJS-Partnership received in 2001 is not available to petitioners because, under normal business practice, petitioners would not have deferred to 2002 more than 50 percent of the income from the crops.

Respondent acknowledges that Rev. Rul. 74-145, supra, has relaxed the rule of section 451(d) to make available the section 451(d) deferral of crop insurance proceeds to a farmer who normally treats as income in the year following crop production less than all of the income from the sale of crops for a year, but only where the farmer normally defers to the following year more than 50 percent of the current year's crop income.

Petitioners point out that although Rev. Rul. 74-145, supra, uses the terms "substantial portion" and "50 percent", those terms are not found in section 451(d) or in section 1.451-6(a)(1), Income Tax Regs. Petitioners argue that the 35 percent of sugar beet income they normally defer should be treated as substantial and should be sufficient to support the deferral to 2002 of all crop insurance proceeds received in 2001.

We acknowledge that the word "substantial" appears in other contexts throughout the Internal Revenue Code as well as throughout the regulations and often is used to refer to "less than 50 percent".[4]

Although the statutory and regulatory provisions are not free of ambiguity, we agree with respondent's position. As explained, the legislative history of the deferral provision of section 451(d) makes it clear that Congress was concerned not about "all" mismatches between years of a farmer's income and expenses. Rather, Congress was concerned about farmers whose crops were produced in one year but sold in and therefore generated income only in the following year.

The stipulated evidence does not tell us when WJS-LLP and WJS-Partnership sold their sugar beet crops--in the year of production or in the following year (or over the course of both years). The stipulated evidence does not explain to us the basis for the apparent accounting and tax convention used in the sugar

---

[4] For example, under sec. 45D(d)(2)(A)(ii) and (iii), relating to the qualified status of an active low-income community business in connection with the new markets tax credit, "substantial" refers to 40 percent of tangible business assets and services in a low-income community. Sec. 1.45D-1(d)(4)(i)(B) and (C), Income Tax Regs.

Under sec. 6662(d)(1)(A), "substantial" may refer to an understatement of tax of just 10 percent of the tax required to be shown on a return.

beet industry to report in the current year only 65 percent and in the following year 35 percent of sugar beet income.

The use in the related regulations of the definite article "the" to describe crop income that a farmer normally must defer to a year following crop production (in order to qualify for the section 451(d) deferral of related insurance proceeds) is not consistent with the holding petitioners seek under which even a relatively small deferral percentage of normal crop income would result in eligibility under section 451(d) for full deferral of 100 percent of the related crop insurance proceeds.

For 2001, WJS-LLP and WJS-Partnership reported only 35 percent of sugar beet crop income from 2000 and (but for the sugar beet crop damage) would have reported 65 percent of the sugar beet crop income from 2001. Both of these figures suggest that the crop insurance proceeds WJS-LLP and WJS-Partnership received in 2001 should be reported in 2001. To hold otherwise would further distort the income reported in 2001 and 2002 (namely, for 2001 only 35 percent of 2000 crop income would be reported, but for 2002 100 percent of the insurance proceeds received in 2001 and also 65 percent of 2002 sugar beet crop income would be reported).

We conclude that on the facts before us, WJS-LLP and WJS-Partnership and petitioners are required to report as taxable

income in 2001 all $201,919 of the sugar beet crop insurance proceeds received in 2001.

Under section 6662(b)(1), a taxpayer may be liable for a 20-percent accuracy-related penalty where a tax underpayment was related to negligence or to disregard of Federal income tax rules or regulations.

However, if there was reasonable cause for the underpayment and the taxpayer acted in good faith, the taxpayer will not be liable for the accuracy-related penalty. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.

In light of the difficult interpretation of section 451(d) at issue herein, we exercise our discretion not to sustain the section 6662(b)(1) penalties determined by respondent. We believe petitioners acted with reasonable cause and in good faith in reporting in 2002 the crop insurance proceeds received in 2001.

To reflect the foregoing,

Decisions will be entered

under Rule 155.
