133 T.C. No. 9

UNITED STATES TAX COURT

TAPROOT ADMINISTRATIVE SERVICES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15396-07.                    Filed September 29, 2009.

R determined that P is ineligible for S corporation status in 2003 because its shareholder was a Roth individual retirement account (Roth IRA). As a consequence, R determined that P is taxable as a C corporation for 2003.

<u>Held</u>: The Roth IRA is not an eligible S corporation shareholder. P is taxable as a C corporation for 2003.

<u>Steven R. Mather</u> and <u>Kenneth M. Barish</u>, for petitioner.

<u>David W. Sorensen</u>, for respondent.

OPINION

WHERRY, <u>Judge</u>:  This case, which involves a petition for redetermination of a deficiency for petitioner's 2003 tax year, is before the Court on respondent's October 23, 2008, motion for partial summary judgment.  See Rule 121(a).[1]  Respondent argues that petitioner is not eligible for S corporation status during 2003 because it had an ineligible shareholder--a Roth individual retirement account (Roth IRA)--during that year.  Petitioner counters that a Roth IRA is an eligible S corporation shareholder and that petitioner's S corporation status remained intact.  For the reasons discussed below, we agree with respondent.

<u>Background</u>

Petitioner is a Nevada corporation that elected S corporation status and filed its 2003 tax return on a Form 1120S, U.S. Income Tax Return for an S Corporation.[2]  Petitioner's sole shareholder during 2003 was a custodial Roth IRA account for the benefit of Paul DiMundo.[3]

---

[1]Rule references are to the Tax Court Rules of Practice and Procedure.  Unless otherwise noted, section references are to the Internal Revenue Code of 1986, as amended and in effect for the tax year at issue.

[2]The Form 1120S indicates that petitioner's S election was effective Oct. 2, 2002.

[3]The account was held at the First Trust Co. of Onaga in Onaga, Kansas.

Respondent issued petitioner a notice of deficiency on April 10, 2007. Respondent made various determinations, including that petitioner is taxable as a C corporation for 2003 because it had an ineligible shareholder. Petitioner filed a petition with this Court on July 6, 2007. Respondent moved for partial summary judgment on the issues of whether petitioner is eligible for S corporation status for Federal tax purposes for 2003 and, if not, whether petitioner is treated as a C corporation for that year. Petitioner contests that motion.

## Discussion

### A. Summary Judgment

Rule 121(a) allows a party to move "for a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy." Summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). Facts are viewed in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518,

520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The Court has considered the pleadings and other materials of record and concludes that there is no genuine justiciable issue of material fact. Whether a Roth IRA is an eligible S corporation shareholder is a legal question appropriate for decision by summary judgment.

B. S Corporations: Shareholder Eligibility

An S corporation is not generally subject to Federal income taxes. Sec. 1363(a).[4] Like a partnership, it is a conduit through which income flows to its shareholders. See Gitlitz v. Commissioner, 531 U.S. 206, 209 (2001) ("Subchapter S allows shareholders of qualified corporations to elect a 'pass-through' taxation system under which income is subjected to only one level of taxation.").

A qualifying "small business corporation" must affirmatively elect S corporation status in order to be treated as an S corporation for Federal income tax purposes. Secs. 1361(a), 1362(a)(1). That S election terminates automatically and immediately if any of the eligibility rules is violated. Sec. 1362(d)(2). For example, if an ineligible shareholder acquires stock in an S corporation, the S corporation's S election

_____

[4]Although S corporations generally do not pay Federal income tax, in some circumstances they may be subject to corporate-level taxes on certain built-in gains and excess passive investment income. See secs. 1374(a), 1375(a).

terminates on the date on which the ineligible shareholder acquired the stock.  Sec. 1362(d)(2)(B); sec. 1.1362-2(b)(2), Income Tax Regs.  If we agree with respondent that a Roth IRA is an ineligible S corporation shareholder, then petitioner was not an S corporation during 2003 and should be taxed as a C corporation for that year.

The S corporation eligibility rules, which focus on both the corporate and shareholder levels, are quite elaborate.  Among those rules are detailed shareholder eligibility requirements that restrict the number and type of eligible S corporation shareholders.  In general, S corporation shareholder eligibility is limited to domestic individuals, estates, certain trusts, and certain exempt organizations.  See sec. 1361(b)(1)(B), (c)(2), (6).  Section 1361(c)(2)(A) prescribed, as of the tax year at issue, the types of trusts that are eligible S corporation shareholders:

(2) Certain trusts permitted as shareholders.--

(A) In general.--For purposes of subsection (b)(1)(B), the following trusts may be shareholders:

(i) A trust all of which is treated (under subpart E of part I of subchapter J of this chapter) as owned by an individual who is a citizen or resident of the United States.

(ii) A trust which was described in clause (i) immediately before the death of the deemed owner and which continues in existence after such death, but only for the 2-year period beginning on the day of the deemed owner's death.

(iii) A trust with respect to stock transferred to it pursuant to the terms of a will, but only for the 2-year period beginning on the day on which such stock is transferred to it.

(iv) A trust created primarily to exercise the voting power of stock transferred to it.

(v) An electing small business trust.

The list of eligible S corporation shareholders has been anything but static. When subchapter S was first added to the Internal Revenue Code in 1958, the only permissible S corporation shareholders were domestic individuals and estates. In the Tax Reform Act of 1976, Pub. L. 94-455, sec. 902(c)(2)(A), 90 Stat. 1609, Congress amended subchapter S to allow certain trusts to own S corporation stock. In the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1316(a), 110 Stat. 1785, Congress amended section 1361(b)(1)(B) and added section 1361(c)(6) to permit certain tax-exempt organizations to own S corporation stock.[5] Although it took effect after the tax year at issue, a more recent and more relevant congressional amendment permits a bank to make an S corporation election where the bank's

_____

[5]The list of permissible tax-exempt organizations that sec. 1361(c)(6) permits to own S corporation stock includes qualified pension, profit-sharing, and stock bonus plans (within the meaning of sec. 401(a)) and exempt organizations (within the meaning of sec. 501(a) and (c)(3)). Petitioner's Roth IRA was not a qualified pension, profit-sharing, or stock bonus plan under sec. 401(a) nor an exempt organization within the meaning of sec. 501. Petitioner does not argue to the contrary.

stock is held in a trust that qualifies as an IRA or a Roth IRA. See sec. 1361(c)(2)(A)(vi).[6]

C.    IRAs[7]

Provisions for traditional IRAs were enacted into the Internal Revenue Code as part of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, sec. 2002(b), 88 Stat. 959. The IRA provisions were designed "to create a system whereby employees not covered by qualified retirement plans would have the opportunity to set aside at least some retirement savings on a tax-sheltered basis." Campbell v. Commissioner, 108 T.C. 54, 63 (1997). The basic tax characteristics of a traditional IRA are (1) deductible contributions, (2) the accrual of tax-free earnings (except with respect to section 511 unrelated business

---

[6]The American Jobs Creation Act of 2004, Pub. L. 108-357, sec. 233(a), 118 Stat. 1434, added that provision to sec. 1361(c)(2)(A). The added clause applies only to bank stock held in an IRA or a Roth IRA as of Oct. 22, 2004. Because of the temporal limitation a bank cannot qualify for an S corporation election where (i) any portion of its stock is held in a trust that qualifies as an individual retirement account and (ii) such stock was transferred to the trust after Oct. 22, 2004. We will discuss that clause and what precipitated its addition to the Internal Revenue Code later in this Opinion.

[7]Although the Internal Revenue Code refers only to IRAs and Roth IRAs, to distinguish between Roth IRAs and non-Roth IRAs in this Opinion we refer to non-Roth IRAs as traditional IRAs.

The parties seemingly agree that, for purposes of eligibility as an S corporation shareholder, there is no difference between a traditional IRA and a Roth IRA.

income), and (3) the inclusion of distributions in gross income.[8]
See secs. 219(a), 408(a), (d)(1), (e).

Roth IRAs are of more recent vintage, having been created as part of the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 302, 111 Stat. 825, to further encourage individual savings. The basic tax characteristics of a Roth IRA are (1) nondeductible contributions, (2) the accrual of tax-free earnings, and (3) the exclusion of qualified distributions from gross income. See sec. 408A(a), (c)(1), (d)(1) and (2)(A).[9]

Section 408(a) provides in pertinent part that "the term 'individual retirement account' means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries". However, IRAs and Roth IRAs can assume another legal form. They can be custodial accounts.

---

[8]IRA distributions rolled over pursuant to sec. 408(d)(3) within 60 days of receipt are excluded from the IRA beneficiary's gross income. In addition, for taxable years after 2005 certain qualified charitable distributions of up to $100,000 a year made by an IRA trustee at the IRA beneficiary's direction may be excludable from the IRA beneficiary's income. See sec. 408(d)(8)(A).

[9]The timing of the tax benefit is the critical difference between traditional and Roth IRAs. A traditional IRA provides an immediate tax benefit, as contributions are deductible. When distributions are eventually taken from a traditional IRA, they will be included in gross income and subject to Federal income tax. In contrast, there is no immediate tax benefit to Roth IRA contributions, as they are not deductible. The tax benefit comes later, when qualified distributions are taken from the Roth IRA and are not included in gross income and are therefore not subject to Federal income tax.

In that case, they must be treated as trusts in order to qualify as IRAs. See sec. 408(h). In other words, a custodial account IRA must be treated as a trust in order for it to qualify as an IRA under section 408.

D. Parties' Arguments

Petitioner has two arguments. First, petitioner argues that "a custodial account qualifying as an IRA also meets the qualifications to be a shareholder of an S corporation." According to petitioner, the beneficiary of the custodial account--in this case, Mr. DiMundo--should be considered the shareholder for purposes of section 1361. In support of that argument, petitioner cites section 1.1361-1(e)(1), Income Tax Regs., which provides that "The person for whom stock of a corporation is held by a nominee, guardian, custodian, or an agent is considered to be the shareholder of the corporation for purposes of this paragraph (e) and paragraphs (f) and (g) of this section." Petitioner also cites Rev. Rul. 66-266, 1966-2 C.B. 356, and Priv. Ltr. Rul. (PLR) 86-05-028 (Nov. 4, 1985)[10] for the proposition that S corporation stock held in a custodial account for a disabled person or by a custodian under the Uniform Gifts

---

[10]Private letter rulings may not be used or cited as precedent under sec. 6110(k)(3), but we assume that petitioner cites the 1985 private letter ruling as evidence of the practice of the Commissioner. See Hanover Bank v. Commissioner, 369 U.S. 672, 686 (1962); Magdalin v. Commissioner, T.C. Memo. 2008-293 n.7.

to Minors Act is treated as held by the disabled person or child. Petitioner's other argument is that an IRA is a grantor trust that qualifies as an S corporation shareholder under section 1361(c)(2)(A)(i), which provides that eligible S corporation shareholders include "A trust all of which is treated (under subpart E of part I of subchapter J of this chapter) as owned by an individual who is a citizen or resident of the United States."[11]

Respondent argues that "an IRA custodial account is very different" from the custodial accounts that were the subjects of the revenue ruling and the PLR because in those instances "the assets are held in a custodial account for someone who can not legally hold them for themselves, and the income is taxed currently." Respondent points to the sharp contrast between those situations and the instant one "where a person who can legally hold the asset chooses to transfer such assets to the custodian so tax benefits can be achieved." Addressing petitioner's other argument, respondent points to Rev. Rul. 92-73, 1992-2 C.B. 224, in which the Commissioner concluded that a trust that qualifies as an IRA is not a permitted shareholder of an S corporation.

---

[11]Subpt. E of pt. I of subch. J includes secs. 671-679. Trusts that fall under those sections are often referred to as "grantor trusts".

E.  Roth IRAs Are Not Eligible S Corporation Shareholders[12]

We begin by acknowledging that no statute or regulation in effect during 2003 explicitly prohibited a traditional or a Roth IRA from owning S corporation stock.[13]  At that time, the only legal authority specifically addressing the issue was Rev. Rul. 92-73, supra.[14]  Thus, the legal issue presented in this case is one of first impression in our Court.

1.  Deference to Revenue Rulings

"A 'Revenue Ruling' is an official interpretation by the Service that has been published in the Internal Revenue Bulletin. Revenue Rulings are issued only by the National Office and are published for the information and guidance of taxpayers, Internal Revenue Service officials, and others concerned."  Sec. 601.601(d)(2)(i)(a), Statement of Procedural Rules.

---

[12]That is, except for the limited transitory relief explicitly authorized by Congress vis-a-vis S corporation banks. See supra p. 6.

[13]Recently finalized sec. 1.1361-1(h)(1)(vii), Income Tax Regs., contains such an explicit prohibition.  The regulation was effective Aug. 14, 2008.  T.D. 9422, 2009-2 C.B. 898.

[14]There is one judicial opinion, involving a case in which neither the Commissioner nor the United States was a party that touched on, but did not decide, the issue.  See Schuylkill Skyport Inn, Inc. v. Rich, Civil No. 95-3128 (E.D. Pa., Jan. 6, 1998) ("All of the parties to this litigation recognize that, if an IRA is a shareholder of a corporation, that corporation under the Internal Revenue Code and Regulations cannot be a valid Subchapter 'S' corporation.").

We are not bound by revenue rulings,[15] and, applying the standard enunciated by the Supreme Court in Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), the weight (if any) that we afford them depends upon their persuasiveness and the consistency of the Commissioner's position over time. See PSB Holdings, Inc. v. Commissioner, 129 T.C. 131, 142 (2007) ("[W]e evaluate the revenue ruling under the less deferential standard enunciated in Skidmore v. Swift & Co., 323 U.S. 134 (1944)").[16] The

---

[15]See, e.g., Estate of Lang v. Commissioner, 64 T.C. 404, 406-407 (1975) ("A revenue ruling, without more, of course, is simply the contention of one of the parties to the litigation, and is entitled to no greater weight."), affd. in part and revd. in part on other grounds 613 F.2d 770 (9th Cir. 1980). In affirming that opinion in part, the Court of Appeals concluded that "The Tax Court properly declined to defer to an unreasonable ruling." Estate of Lang v. Commissioner, 613 F.2d at 776.

[16]In United States v. Mead Corp., 533 U.S. 218 (2001), the Supreme Court recognized that there are various types of agency pronouncements that may be entitled to differing levels of deference and that the lowest level of deference--Skidmore deference--has continuing vitality. See id. at 234 ("Chevron did nothing to eliminate Skidmore's holding that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency" (quoting Skidmore v. Swift & Co., 323 U.S. 134, 139 (1944)); id. at 235 (concluding that a tariff classification ruling by the U.S. Customs Service "may surely claim the merit of its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight"). In so doing, the Supreme Court set forth a two-prong test for determining whether to afford an agency pronouncement Chevron deference. Id. at 226-227 ("We hold that administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."); see also Marmolejo-Campos v. Holder, 558 F.3d 903,
(continued...)

Statement of Procedural Rules acknowledges the meaningful

distinction to be drawn between regulations and revenue rulings.

---

[16](...continued)
908 (9th Cir. 2009) (en banc) ("Not every agency interpretation of its governing statute is entitled to Chevron deference, however.").

The Department of the Treasury and the Internal Revenue Service issue various types of pronouncements including, for example, Treasury decisions (i.e. regulations), revenue rulings, revenue procedures, technical advice memorandums, and private letter rulings. Those pronouncements warrant varying levels of judicial deference, in accordance with the test set forth by the Supreme Court in United States v. Mead Corp., supra. Revenue rulings do not warrant Chevron deference under the test set forth in United States v. Mead Corp., supra, because they clearly fail the test's second prong. See Nelson v. Commissioner, 568 F.3d 662, 665 (8th Cir. 2009) (analyzing a revenue ruling using Skidmore deference), affg. 130 T.C. 70 (2008); Kornman & Associates, Inc. v. United States, 527 F.3d 443, 454 (5th Cir. 2008) ("Even assuming that revenue rulings satisfy the first prong of the Mead test, see I.R.C. § 7805(a), they clearly fail the second."); id. ("Furthermore, other circuit courts have uniformly held that revenue rulings are not entitled to Chevron deference.") (string citation omitted); see also Aeroquip-Vickers, Inc. v. Commissioner, 347 F.3d 173, 181 (6th Cir. 2003) ("When promulgating revenue rulings, the IRS does not invoke its authority to make rules with the force of law. Specifically, the IRS does not claim for revenue rulings 'the force and effect of Treasury Department regulations.'" (citing Rev. Proc. 89-14, 1989-1 C.B. 814)).

Absent stipulation to the contrary, the appropriate venue for an appeal of the decision in this case is the Court of Appeals for the Ninth Circuit, in which there is strong support for affording revenue rulings Skidmore deference. See Texaco Inc. v. United States, 528 F.3d 703, 711 (9th Cir. 2008) ("We have held that generally revenue rulings are entitled at least to 'Skidmore deference.'"); Omohundro v. United States, 300 F.3d 1065, 1067-1069 (9th Cir. 2002) (per curiam) (analyzing a revenue ruling using Skidmore deference); McDaniel v. Chevron Corp., 203 F.3d 1099, 1112 (9th Cir. 2000) ("Though revenue rulings do not have the force of law, they do constitute a body of experience and informed judgment to which we may look for guidance.").

See sec. 601.601(d)(2)(v)(d), Statement of Procedural Rules ("Revenue Rulings published in the Bulletin do not have the force and effect of Treasury Department Regulations (including Treasury decisions), but are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for that purpose.").

### 2. Persuasiveness of Rev. Rul. 92-73

The rationale underlying Rev. Rul. 92-73, supra, is straightforward--traditional IRAs are not eligible S corporation shareholders because the beneficiary of a traditional IRA is not taxed currently on the IRA's share of the S corporation's income whereas the beneficiaries of the permissible S corporation shareholder trusts listed in section 1361(c)(2)(A) are taxed currently on the trust's share of such income.[17]

The revenue ruling's rationale sensibly distinguishes IRAs from grantor trusts governed by sections 671-679.[18]  "When a

---

[17]Rev. Rul. 92-73, 1992-2 C.B. 224, was issued before the Roth IRA provisions were enacted into the Internal Revenue Code. It referred to IRAs, which we refer to as traditional IRAs.

[18]Although Roth IRAs did not exist when the revenue ruling was issued, the Commissioner would have had even more reason to distinguish Roth IRAs from grantor trusts.  Distributions from a traditional IRA are included in gross income under sec. 408(d). Qualified distributions from a Roth IRA are not includable in gross income under sec. 408A(d).  Thus, if a Roth IRA qualified as an S corporation shareholder, tax alchemy in a free enterprise business context could be achieved.  This would grant an overwhelming competitive tax benefit to a Roth IRA-owned business compared to a C corporation competitor who is subject to two levels of tax--one at the corporate level and another at the
(continued...)

grantor or another person is treated under subpart E (section 671 and following) as the owner of any portion of a trust, there are included in computing his tax liability those items of income, deduction, and credit against tax attributable to or included in that portion."  Sec. 1.671-3(a), Income Tax Regs.; see Estate of O'Connor v. Commissioner, 69 T.C. 165, 174 (1977) ("When a grantor or other person has certain powers in respect of trust property that are tantamount to dominion and control over such property, the Code 'looks through' the trust form and deems such grantor or other person to be the owner of the trust property and attributes the trust income to such person.").  That, of course, is not the case with traditional and Roth IRAs--earnings accrue tax free in both entities.[19]  It follows that the tax

---

[18](...continued)
shareholder level.  Though it can be argued that the unrelated business income tax (UBIT) functions to plug this loophole, it is not clear that the UBIT would do so in a case like the instant one.

[19]When Rev. Rul. 92-73, supra, was issued, Congress had not yet amended sec. 1361 to permit certain tax-exempt entities to own S corporation stock.  See supra p. 6.  With the Small Business Jobs Protection Act of 1996, Pub. L. 104-188, 110 Stat. 1755, certain tax-exempt entities--including employee stock ownership plans (ESOPs) that satisfy the requirements of sec. 401(a)--became eligible S corporation shareholders for the first time.  Petitioner thoughtfully argues that the 1996 amendments undermine the rationale of Rev. Rul. 92-73, supra, because ESOP participants are not taxed currently on an S corporation's income.  Petitioner argues further that "The analysis used by respondent in Rev. Rul. 92-73 was implicitly overturned by the enactment of the S corporation ESOP rules."  We respectfully disagree.  The 1996 amendments in no way bear on the Commissioner's ultimate conclusion in Rev. Rul. 92-73, supra,
(continued...)

relationship between an individual beneficiary and a traditional or Roth IRA is not governed by the grantor trust provisions of subpart E of part I of subchapter J (sections 671-679).[20]

---

[19](...continued)
that the Federal income tax rules relating to grantor trusts are incompatible with the Federal income tax rules relating to IRAs. In other words, the fact that Congress has allowed certain tax-exempt entities (including ESOPs) to own S corporation stock does not mean, ipso facto, that IRAs and grantor trusts are treated the same for Federal income tax purposes. See Staff of Joint Comm. on Taxation, General Explanation of Tax Legislation Enacted in the 104th Congress, at 130-131 (J. Comm. Print 1996). Moreover, as explained later in this Opinion, (1) had Congress intended to allow IRAs to own S corporation stock, it would have said so explicitly and (2) all available evidence reflects that Congress has expressed a contrary intent.

[20]Whether an IRA assumes the legal form of a custodial account or a trust is immaterial to whether an IRA is an eligible S corporation shareholder. Moreover, the fact that Mr. DiMundo's Roth IRA assumed the form of a custodial account undercuts the grantor trust argument. Although Mr. DiMundo's Roth IRA is designated "custodial", it is deemed a trust for purposes of sec. 408. See sec. 408(h). Sec. 408(h) provides that custodial account IRAs are treated as trusts "For purposes of this section"--meaning for purposes of sec. 408 and no other section of the Internal Revenue Code. This means that a custodial account IRA would not be treated as a trust for purposes of sec. 1361(c)(2)(A)(i) and the grantor trust provisions. Furthermore, petitioner's reliance on Rev. Rul. 66-266, 1966-2 C.B. 356, and Priv. Ltr. Rul. 86-05-028 (Nov. 4, 1985) for the proposition that we should look through the custodial account to its owner for S corporation shareholder eligibility purposes is unpersuasive. The fact that the Commissioner has applied the law liberally when dealing with S corporation stock held for disabled individuals does not compel us to conclude that he must extend the same liberal application to all S corporation stock held in custodial accounts whether the owners are disabled or not.

Finally, petitioner's reliance on sec. 1.1361-1(e)(1), Income Tax Regs., is unpersuasive. Paragraph (e), which is titled "Number of shareholders", does not stand for the proposition that the tax law looks through an IRA trust and treats its owner/beneficiary as the shareholder for purposes of
(continued...)

We also note that, as a technical matter, traditional and Roth IRAs do not appear to be grantor trusts and their taxation is governed by sections 408 and 408A, which are in subchapter D, part I, of the Internal Revenue Code. Unlike grantor trusts, traditional and Roth IRAs exist separate from their owners for Federal income tax purposes. Were that not the case, Congress would not have needed to subject IRAs to the unrelated business income tax (UBIT).[21]

---

[20](...continued)
determining S corporation shareholder eligibility. Unlike the instances contemplated by the regulation--where income attributable to S corporation stock (e.g., dividends) flows through a "nominee, guardian, custodian, or an agent" to the individual for whom the stock is held--such income does not flow through an IRA to its beneficiary. It is the IRA's income, not the beneficiary's. An IRA exists on its own--separate from its beneficiary--and, under sec. 408(e)(1) is exempt from taxation unless UBIT is triggered, in which case the income tax is paid by the IRA, not its beneficiary. Although the IRA's accumulated income will, under current law, eventually be released to the beneficiary or successor beneficiary in a taxable (traditional IRA) or nontaxable (Roth IRA) distribution stream some time in the future, that does not make the IRA a "nominee, guardian, custodian, or an agent" of the beneficiary with respect to the S corporation stock for purposes of sec. 1.1361-1(e)(1), Income Tax Regs. See infra note 21. The trust (Mr. DiMundo's Roth IRA) and not Mr. DiMundo (the individual) was petitioner's sole shareholder.

[21]The UBIT, which is provided for in secs. 511-514, functions "to prevent tax-exempt organizations from unfairly using their tax-exempt status to compete with commercial businesses." Alumni Association of the Univ. of Or., Inc. v. Commissioner, T.C. Memo. 1996-63, affd. 193 F.3d 1098 (9th Cir. 1999). The Internal Revenue Code imposes UBIT on tax-exempt organizations, including IRAs. See sec. 408(e)(1). If the Internal Revenue Code treated an IRA's owner as owning the IRA's income--rather than treating the IRA as owning the income itself--Congress would not have needed to subject IRAs to UBIT.

In any event, even assuming arguendo that traditional and Roth IRAs could technically qualify as grantor trusts (because of their owners' powers and interests), it would be nonsensical to treat them as such. In the case of a grantor trust, the grantor is subject to tax on the trust's income and gains--the trust is simply a conduit through which the income and gains pass to the grantor. See Estate of O'Connor v. Commissioner, supra at 174; see also Hornberger v. Commissioner, T.C. Memo. 2000-42 n.5 ("A grantor trust is not subject to the income tax. Rather, all of the income and deductions pertaining to a grantor trust must be taken into account by the grantor."), affd. 4 Fed. Appx. 174 (4th Cir. 2001).[22] In stark contrast, the tax law does not look through IRAs, and no Federal income tax is paid on an IRA's income and gains (except when UBIT is triggered). Because the tax-free accrual of income and gains is one of the cornerstones of traditional and Roth IRAs, it would make no sense to treat IRAs as grantor trusts thereby ignoring one of their quintessential tax benefits. As it stands, an IRA--and not its grantor or beneficiary--owns the IRA's income and gains, and

---

[22]In fact, a grantor trust that is treated as owned by one person and meets the requirements of sec. 1.671-4(b)(2)(i)(A), Income Tax Regs., need not obtain a separate tax identification number, sec. 301.6109-1(a)(2), Proced. & Admin. Regs., and is not required to file a separate tax return, sec. 1.671-4(b), Income Tax Regs. Instead, the owner may report the trust's income on his or her own return.

section 408(e) exempts the IRA from Federal income tax (except when UBIT is triggered).

Finally, since issuing Rev. Rul. 92-73, supra, the Commissioner has applied it consistently to all IRAs. For example, the Commissioner regularly invokes Rev. Rul. 92-73, supra, in PLRs addressing inadvertent termination waiver requests under section 1362(f).[23] See, e.g., Priv. Ltr. Rul. 2009-15-020 (Dec. 19, 2008); Priv. Ltr. Rul. 2008-45-037 (July 31, 2008); Priv. Ltr. Rul. 2005-01-013 (Sept. 29, 2004).

3.  Other Compelling Reasons To Reject the Legal Interpretation Petitioner Advocates

Of more significance than Rev. Rul. 92-73, supra, is the fact that there is no indication that Congress ever intended to allow IRAs to own S corporation stock; the only available evidence suggests otherwise. To begin with, IRAs are not explicitly listed in section 1361 as eligible S corporation shareholders. Had Congress intended to render IRAs eligible S corporation shareholders, it could have done so explicitly, as it has in the limited case of banks desiring to elect S status. See Traynor v. Turnage, 485 U.S. 535, 547 (1988) ("If Congress had intended instead that primary alcoholism not be deemed 'willful misconduct' for purposes of § 1662(a)(1), as it had been deemed

---

[23]If an S corporation's S election is inadvertently terminated (for example, because stock is issued to an ineligible shareholder), the S corporation can seek a PLR deeming the termination inadvertent and permitting the S corporation to retain its S corporation status. See sec. 1362(f).

for purposes of other veterans' benefits statutes, Congress most certainly would have said so."); <u>Helvering v. Stockholms Enskilda Bank</u>, 293 U.S. 84, 93 (1934) ("If it had been intended to make an exemption in respect of such taxes in favor of nonresidents, it is reasonable to suppose that Congress would have said so in explicit terms instead of leaving the fate of taxes upon the large sums thus involved to depend upon the way in which a court might happen to construe the word 'resident'--a most unsatisfactory substitute, as the conflicting decisions in this and the next succeeding case bear witness." (fn. ref. omitted)). Moreover, the events that precipitated Congress' decision to carve out the very narrow exception that allows IRAs to hold shares in S corporation banks reflect that, except for that limited circumstance, Congress has not permitted IRAs to own S corporation stock.

In a section of the Gramm-Leach-Bliley Act, Pub. L. 106-102, sec. 721, 113 Stat. 1470 (1999), titled "Expanded Small Bank Access to S Corporation Treatment", Congress ordered the Comptroller General of the United States to conduct a study of possible revisions to the rules governing S corporations including "permitting shares of such corporations to be held in individual retirement accounts". Such a study would have been unnecessary if Congress considered IRAs eligible S corporation shareholders.

The Comptroller General's response came in the form of a June 2000 Government Accounting Office (GAO) report to Congress. The GAO observed that "Although C-corporation banks are permitted to have IRA shareholders, if they wish to become S-corporations they must eliminate the IRA shareholders" and that "Treasury officials generally opposed this proposal because permitting IRAs to hold shares in S-corporation banks would create untaxed income for a potentially long period of time."  U.S. General Accounting Office, BANKING TAXATION: Implications of Proposed Revisions Governing S-Corporations on Community Banks 6-7 (GAO/GGD-00-159) (2000).  Later in its report the GAO noted that "Legal and accounting experts we interviewed indicated that eliminating IRA shareholders increases the cost and length of the Subchapter S conversion process for banks and their shareholders" and went on to explain why that is so.  Id. app. IV at 47.

Congress eventually acted by adding section 1361(c)(2)(A)(vi) in 2004.  See supra note 6.  That provision is a very narrow one.  It permits traditional and Roth IRAs to be shareholders of S corporation banks, but only to the extent of bank stock held by the IRAs as of October 22, 2004.  The legislative history underlying that statutory amendment reflects that Congress was acting to amend the law because of its belief that IRAs were ineligible S corporation shareholders.  See H. Rept. 108-548 (Part 1), at 129 (2004) ("Under present law, an IRA cannot be a shareholder of an S corporation.").

If petitioner is correct, then that change in law--preceded by a congressionally mandated study--was unnecessary, and in enacting section 1361(c)(2)(A)(vi) Congress engaged in a useless act after sending the Comptroller General on a fool's errand. Although interpretations by a subsequent Congress of a previous Congress' legislative intent are not controlling,[24] we are reluctant to impute a useless act to Congress and to reach a conclusion that renders an entire clause of section 1361 mere surplusage. See United States v. Hecla Mining Co., 302 F.2d 204, 211 (9th Cir. 1961) ("We cannot assume that Congress did a useless act. The fact that Congress saw fit to enact this amendment confirms our conclusion that there may be no offset in the computation of interest.").

The trend toward increased flexibility for S corporations means that the time may come when Congress sees fit to allow IRAs to own stock in any S corporation.[25] For now, as in 2003, that is

_____

[24]Although a subsequent Congress' view of a prior Congress' action is not controlling, see United States v. Phila. Natl. Bank, 374 U.S. 321, 348-349 (1963) (observing that "'The views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one'" (quoting United States v. Price, 361 U.S. 304, 313 (1960))), a subsequent Congress' view is certainly entitled to weight in a case like this one, see Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 596 (1980) ("[W]hile the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, such views are entitled to significant weight, and particularly so when the precise intent of the enacting Congress is obscure" (citations omitted)).

[25]On May 7, 2009, a bill was introduced in the Senate that would expand S corporation shareholder eligibility to include all
(continued...)

not the case. As a consequence, Mr. DiMundo's Roth IRA was not eligible to own shares in petitioner. Because it did, petitioner was ineligible for S corporation status in 2003. See sec. 1362(d)(2). Petitioner is therefore a C corporation for Federal income tax purposes for the 2003 tax year.

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>An appropriate order will be issued granting respondent's motion for partial summary judgment</u>.

Reviewed by the Court.

COLVIN, COHEN, WELLS, HALPERN, VASQUEZ, GALE, THORNTON, MARVEL, GOEKE, GUSTAFSON, and PARIS, JJ., agree with this majority opinion.

---

[25](...continued)
traditional and Roth IRAs by modifying sec. 1361(c)(2)(A)(vi). See S. 996, 111th Cong., 1st Sess., sec. 6(a) (2009). The same proposal was introduced in the Senate in each of the two preceding Congresses. See S. 3063, 110th Cong., 2d Sess., sec. 6(a) (2008); S. 3838, 109th Cong., 2d Sess., sec. 102(a) (2006).

HALPERN, J., concurring:  I agree with much of the majority opinion but write to supplement the argument therein.

In this case, we must decide whether a Roth IRA is a proper shareholder of an S corporation.  Because the Roth IRA is a custodial account, petitioner argues that, pursuant to section 1.1361-1(e)(1), Income Tax Regs., its beneficiary, Mr. DiMundo, is considered the shareholder of the S corporation.  Mr. DiMundo, of course, would be a proper S corporation shareholder.

I agree with Judge Holmes as to the meaning of section 1.1361-1(e)(1), Income Tax Regs.  Yet acceptance of that meaning is only the starting point for an analysis of the interaction between the rules governing S corporations and those governing IRAs.  See, e.g., Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 250 (1970) ("Statutory interpretation requires more than concentration upon isolated words; rather, consideration must be given to the total corpus of pertinent law and the policies that inspired ostensibly inconsistent provisions.").

Custodial accounts constituting IRAs are accorded special (tax-exempt) treatment by section 408(e)(1).  The general rule for custodial accounts (as the majority notes, see majority op. note 20) is flowthrough taxation of the beneficiary; i.e., current inclusion of income, etc.  That tax treatment is a key characteristic of custodial accounts and, presumably, the rationale for considering the beneficiary of a custodial account that holds S corporation stock to be a shareholder of the S

corporation.  The S corporation thus earns income that (thanks to the regulation) is considered to flow directly to the beneficiary of the custodial account.  Custodial accounts qualifying as IRAs, however, preclude that flowthrough tax treatment, either deferring taxation of (what is still pretax) income (traditional IRA) or exempting that income entirely (Roth IRA).[1]  For that reason, a custodial account qualifying as an IRA utterly subverts the rationale for the attribution rule in the regulation.  Thus, I do not consider the regulation as authority that a custodial account qualifying as an IRA is a proper shareholder of an S corporation.[2]

In short, the critical attributes of an IRA--i.e., deferral of or exemption from taxation--are antithetical to the rationale for permitting custodial accounts to be shareholders of S corporations.  Section 408 affords exceptional (and highly favorable) tax treatment to certain custodial accounts.  For that

---

[1]In his dissent, Judge Holmes quotes sec. 1.1361-1(e)(1), Income Tax Regs., as follows:  "Ordinarily, the person who would have to include in gross income dividends distributed with respect to the stock of the corporation (if the corporation were a C corporation) is considered to be the shareholder of the corporation."  Dissenting op. p. 29.  Yet the effect (indeed, the purpose) of sec. 408 is to alter the tax dynamics of that distribution--the person who owns C corporation stock through an IRA need not (of course) include in gross income any dividend so distributed.

[2]Judge Holmes argues that "the stakes are not that great".  Dissenting op. p. 57.  But that misses the point.  I suggest that, regardless of the financial stakes, the logic of the statute precludes the result petitioner seeks.

reason, IRAs are different in kind from regular custodial accounts and thus are not eligible S corporation shareholders.

GALE, THORNTON, MARVEL, GOEKE, and WHERRY, JJ., agree with this concurring opinion.

HOLMES, J., dissenting:  In 2003, there were 2500 shares of stock in Taproot Administrative Services, Inc., titled "First Trust Company of Onega, as custodian for Paul DiMundo."  A regulation states that "[t]he person for whom stock of a corporation is held by a * * * custodian * * * is considered to be the shareholder of the corporation."[1]  The First Trust Company of Onega is a custodian.  DiMundo would therefore seem to be the person who is considered to be Taproot's shareholder.[2]  Since he is undoubtedly an individual, why exactly is it that Taproot is disqualified from being an S corporation?  If enough commentators say "IRAs can't be S-corporation shareholders" or, more precisely, "the IRS says IRAs can't be S corporation shareholders," does that make it so?[3]

And might we not be subtly assuming the conclusion by phrasing the questions that way, when it might turn out to be the case that IRAs--at least some IRAs--don't own property themselves, but are instead a form of ownership?

---

[1]  Sec. 1.1361-1(e)(1), Income Tax Regs.

[2]  The Commissioner subtly restates the ownership by paraphrase, variously stating in his motion that DiMundo's Roth IRA was the shareholder, Mot. at 2; that the stock was held in a custodial IRA account for the benefit of DiMundo's self-directed Roth IRA, Mot. at 3; and that the stock was owned by the trust company as custodian for DiMundo, Sorenson Decl. at 2.  We should of course not sort this out on a summary-judgment motion, but instead assume the supportable facts most in Taproot's favor.

[3]  Taproot and its companion cases are only a few of nearly a hundred pending before the Court.  Fourteen were assigned to my division, but the parties settled them and decided to make Taproot the test case.

I.

The majority's analysis of this question--apart from a brief mention in a footnote, see majority op. note 20--drifts away from construing the regulation into an exegesis of a revenue ruling dealing with IRAs set up as trusts,[4] private letter rulings,[5] and legislative nonhistory[6] (i.e., the story of what some Congresses thought previous Congresses had decided, or even what some agencies told Congress the IRS thought that previous Congresses had decided.)

I begin with the Code. Section 1361(b)(1)(B) defines an S corporation (which the Code more formally calls a "small business corporation") as a domestic corporation "which does not * * * have as a shareholder a person (other than an estate, a trust described in subsection (c)(2), or an organization described in subsection (c)(6)) who is not an individual." An S corporation's shareholders must be somewhere on this list. Taproot argues that DiMundo qualifies because he is an individual person.

That should be obvious. When the Code doesn't define a term, courts try to construe it in accordance with its ordinary everyday meaning. United States v. New Mexico, 536 F.2d 1324, 1328 (10th Cir. 1976). And the term "individual" means a human being. Jonson v. Commissioner, 353 F.3d 1181 (10th Cir. 2003), affg. 118 T.C. 106 (2002); see also Liddane v. Commissioner, T.C.

---

[4]  See majority op. p. 11.

[5]  See majority op. pp. 18-19.

[6]  See majority op. p. 19.

Memo. 1998-259, affd. without published opinion 208 F.3d 206 (3d Cir. 2000). Section 7701(a)(1) includes "individual" in its list of those whom the Code regards as "persons," along with "a trust, estate, partnership, association, company or corporation." But when property is held by a custodian for the benefit of another, who counts under section 1361(b)(1)(B) as an "individual person?"--the holder, the beneficiary, or the account itself? The Secretary should be the one resolving such ambiguity in the Code. And he has.

In 1995, the Secretary filled this particular gap with section 1.1361-1(e), Income Tax Regs. This regulation tells us who counts as an individual shareholder of an S corporation:

> Ordinarily, the person who would have to include in gross income dividends distributed with respect to the stock of the corporation (if the corporation were a C corporation) is considered to be the shareholder of the corporation. * * *

The regulation explains by example how to apply this general principle in the cases of ownership by a married couple, by tenants in common, or by joint tenants. But then it reverts to stating a general rule for other ambiguous cases:

> The person for whom stock of a corporation is held by a nominee, guardian, custodian, or an agent is considered to be the shareholder of the corporation for purposes of this paragraph (e) and paragraphs (f) and (g) of this section. * * * [Id.[7]]

---

[7] While section 1.1361-1(e), Income Tax Regs., is captioned "Number of shareholders," and the majority apparently dismisses its relevance to the question of who may own S corporation stock in part on that account, see majority op. note 20, that argument is belied by the cross-reference to paragraphs (f) and (g). Even if captions count, section 1361-1(f), Income Tax Regs. ("Shareholder must be an individual or estate"), does

(continued...)

The Code doesn't define "custodian", but the dictionary definition is "one entrusted officially with guarding and keeping." Merriam Webster's Third New International Dictionary 559 (2002). That fits here, and is similar to other uses of the word in federal law. See, e.g., 31 U.S.C. sec. 3302(a) (2006) (custodian as someone who keeps money safe without using it himself); Marshall v. Marshall, 547 U.S. 293, 310 n.4 (2006) (alien property custodian as someone who receives, holds, administers, and accounts for money). This seems to fit with what the Onega trust company was doing for DiMundo. I conclude from this that Onega actually is a custodian of the S-corporation stock.

That Taproot's stock is held by a custodian is not enough, of course, for it to qualify as an S corporation. Let us go to the regulation again. It states:

> The person for whom stock of a corporation is held by a nominee, guardian, custodian, or an agent is considered to be the shareholder of the corporation for purposes of this paragraph (e) and paragraphs (f) and (g) of this section. For example, a partnership may be a nominee of S corporation stock for a person who qualifies as a shareholder of an S corporation. However, if the partnership is *the beneficial owner* of the stock, then the partnership is the shareholder, and the corporation does not qualify as a small business corporation.

Sec. 1.1361-1(e)(1), Income Tax Regs. (Emphasis added.)

Who, then, is the "person for whom stock of a corporation is held?" The italicized phrase from the last sentence in the excerpt leads me to read the regulation as equating "beneficial

---

[7](...continued)
tell us who qualifies as a shareholder, and expressly includes in the list anyone who counts as a shareholder under section 1.1361-1(e), Income Tax Regs.

owner" with "the person for whom stock of a corporation is held." And this would mean, in a case like this one, that the correct question is: "Who's the beneficial owner of the Taproot stock held in the IRA?"

Whether DiMundo's IRA custodial account makes him the beneficial owner depends upon the terms of his contract with the custodian and applicable local law. We recently held, for example, that although a partner had title to a partnership interest he was not its beneficial owner because the income from the partnership was distributed to his mother. Windheim v. Commissioner, T.C. Memo. 2009-136. And the Commissioner himself has already ruled that "for purposes of determining who is a shareholder under the provisions of Subchapter S of the Code, beneficial ownership of the stock rather than technical legal title is controlling." Rev. Rul. 70-615, 1970-2 C.B. 169, clarified by Rev. Rul. 75-261, 1975-2 C.B. 350 ("accordingly, since under the facts in Revenue Ruling 70-615, the taxpayer held the share of stock as an accommodation for the transferor under an 'acknowledgment of trust' and had no beneficial interest therein the taxpayer is properly characterized as a nominee, and not as a trustee").

The problems with figuring out who, exactly, counted when a stock's title was held by a nominee or agent caused much litigation before the 1995 regulation. See, e.g., Wilson v. Commissioner, 560 F.2d 687, 689 (5th Cir. 1977) (beneficial ownership of stock, not mere record ownership or other formal indicia, determines who bears those tax consequences), affg. T.C. Memo.

1975-92; W & W Fertilizer Corp. v. United States, 527 F.2d 621, 626 (Ct. Cl. 1975) (trusts, but not custodians, count as real parties in interest for consenting to subchapter S status); Kean v. Commissioner, 469 F.2d 1183, 1187 (9th Cir. 1972) ("'shareholders' who must file a consent are not necessarily 'shareholders of record' but rather beneficial owners of shares"), affg. in part and revg. in part 51 T.C. 337 (1968); Danenberg v. Commissioner, 73 T.C. 370, 390 (1979) (beneficial ownership controls); CHM Co. v. Commissioner, 68 T.C. 31, 37 n.13 (1977; Hoffman v. Commissioner, 47 T.C. 218, 233-234 (1966) (beneficial ownership, not technical legal title, critical factor), affd. per curiam 391 F.2d 930 (5th Cir. 1968).

But let's assume on this motion for summary judgment that DiMundo (and not someone he's designated) would be that beneficiary. As applied to this case, then, section 1.1361-1(e)(1), Income Tax Regs., would read: "For purposes of paragraph (e) (limit on number of shareholders) and paragraph (f) (shareholders must be individuals), the person for whom stock of the corporation is held (Paul DiMundo) by a nominee, guardian, custodian, or an agent (Onega) is considered to be the shareholder of an S corporation (Taproot)." This reading seems to make sense.

Taproot cited Revenue Ruling 66-266, 1966-2 C.B. 356, and Priv. Ltr. Rul. 86-05-028 (Nov. 4, 1985) to support its reading of the regulation. The Commissioner seized on these pre-1995 citations and urged that they be read as limited to custodians

for property held by minors and disabled persons.  The majority

agreed:

> The fact that the Commissioner has applied the law liberally
> when dealing with S corporation stock held for disabled
> individuals does not compel us to conclude that he must
> extend the same liberal application to all S corporation
> stock held in custodial accounts whether the owners are
> disabled or not.

See majority op. note 20.

The reasoning of Revenue Ruling 66-266 needs to be qualified

in light of 40 years' of amendments to the S corporation rules,

amendments that have now created a legal environment where the

initial rule--only individuals and estates of decedents can hold

S corporation stock in their own names--has been superseded by an

expanding list of exceptions, stretching from tax-exempt organi-

zations (under sections 401(k) and 501) to ESOPs, QSSTs, trusts,

corporations, and partnerships.

The 1966 revenue ruling was important at the time for start-

ing to erode the law's focus on title.  But the regulation's

establishment as a general principle that title won't matter if

stock is held by one entity for another was an avulsive change.

What matters now is whether the beneficial owner of the stock is

an eligible owner.

The list in section 1.1361-1(e)--"nominee, guardian, custo-

dian, or an agent"--has no limitation based on the disability of

any individual beneficiary.  And the use of the word "custodian"

strongly suggests that a plain reading of the regulation supports the taxpayer's position here.[8]

Bankruptcy courts, which have some expertise in the area, have no trouble holding that the beneficial interest of a debtor in an IRA held by a custodian (or a trustee, for that matter) is attached by the section 6321 federal tax lien, classifying IRAs as the debtor's own property under 11 U.S.C. sec. 541 (2006). See, e.g., Schreiber v. United States, 163 Bankr. 327, 334 (Bankr. N.D. Ill. 1994); Crystal Bar, Inc. v. Cosmic, Inc., 758 F. Supp. 543, 544, 551 (D.S.D. 1991); Deppisch v. United States, 227 Bankr. 806, 808-09 (Bankr. S.D. Ohio 1998). This gives the IRS the power to seize taxpayers' property held in an IRA. See secs. 6331-6334; Kane v. Capital Guardian Trust Co., 145 F.3d 1218, 1223 (10th Cir. 1998) (right to liquidate IRA undoubtedly constituted a "right to property" subject to levy); Equitable Life Assurance Socy. of the United States v. Mischo, 363 F. Supp. 2d 1239, 1245-46 (E.D. Cal. 2005). Such cases suggest that the beneficial owner of property held in a custodial individual retirement account is the owner of the IRA.

Nonetheless, the majority dismisses the regulation's applicability because:

> That regulation * * * does not stand for the proposition that the tax law looks through an IRA trust and treats its owner/beneficiary as the shareholder for purposes of determining S corporation shareholder eligibility. Unlike

---

[8] It is striking that the Commissioner chose to discuss the revenue ruling, and even private letter rulings, in his brief, but omitted any mention of what seems to be a directly-on-point regulation.

the instances contemplated by the regulation--where income attributable to S corporation stock (e.g., dividends) flows through a "nominee, guardian, custodian, or an agent" to the individual for whom the stock is held--such income does not flow through an IRA to its beneficiary. It is the IRA's income, not the beneficiary's.

See majority op. note 20. I don't think this is right--a custodial IRA is an account, not a trust--and while it is certainly a method of owning something, it's not obvious that a custodial account itself is an entity capable of owning anything. One wouldn't say, for example, that "Blackacre was owned by a tenancy by the entirety," one would say that "Mr. and Mrs. X owned Blackacre as tenants by the entirety." And so the final question to ask of the regulation is whether a custodial account is itself "the person for whom stock of a corporation is held" by a custodian. The majority's dismissal seems odd in light of the power of both bankruptcy courts and the collection arm of the IRS to take property in IRAs to pay their owner's debts in a way they never would if the IRA were a legally distinct person.

The majority does make one textual argument. It reasons in note 20 that IRAs must be separate entities because unrelated business income tax (UBIT) is imposed on them:

An IRA exists on its own--separate from its beneficiary-- and, under section 408(e)(1) is exempt from taxation unless UBIT is triggered, in which case the income tax is paid by the IRA, not its beneficiary. Although the IRA's accumulated income will, under current law, eventually be released to the beneficiary or successor beneficiary in a taxable (traditional IRA) or nontaxable (Roth IRA) distribution stream some time in the future, that does not make the IRA a "nominee, guardian, custodian, or an agent" of the beneficiary with respect to the S corporation stock for purposes of section 1.1361-1(e)(1), Income Tax Regs.

But the language of section 408(e) subjecting IRAs to UBIT[9]
seems not that much different from the language of the Code's
excise taxes.  Section 4041(a)(1)(A), for example imposes "a tax
on any liquid other than gasoline."  But no one would say that a
gallon of diesel fuel is a person.  Instead, regulations define
what "person" is liable for the tax.  See, e.g., sec. 48.4041-
4(b), Manufacturers & Retailers Excise Tax Regs.  And, like
section 408(e), section 3121(l)(4), refers to "wages subject to
the taxes imposed by this chapter"--obviously referring not to
"wages" as a "person" owing a tax, but wages earned by a person
owing the tax (and, in context) wages as the source of the tax's
payment.  The majority is ascribing tax incidence--who bears the
tax liability--to rules about tax reporting and withholding.

The more fundamental problem with this reasoning is that, as
I've already noted, *supra* p. 29, the Code itself defines
"person," and custodial accounts are not on that list.  See
Eustice & Kuntz, Federal Income Taxation of S Corporations,
par. 3.03[9] n.145 (4th ed. 2001) ("perhaps the account is not an
entity at all, and the individual should count as the direct
shareholder for purposes of IRC § 1361.  See IRC § 408(h) for

---

[9]     UBIT is a tax imposed by section 511 on the income of
otherwise tax-exempt entities derived from a trade or business
that is regularly engaged in and which is not substantially
related to the reason the entity is tax-exempt--for example, a
pasta company owned by a law school.  C.F. Mueller Co. v.
Commissioner, 190 F.2d 120 (3d Cir. 1951), revg. 14 T.C. 922
(1950).  Sections 408(e)(1) and 408A(a) subject both traditional
and Roth IRAs to UBIT.

support.")[10]  As the Ninth Circuit has held, "determining who is a beneficial shareholder requires analysis of the actual role the shareholder has played in corporate governance."  Pahl v. Commissioner, 150 F.3d 1124, 1129 (9th Cir. 1998), affg. T.C. Memo. 1996-176.  In various custodial account agreements preapproved by the IRS, the depositor (owner) is responsible for providing information to the custodian;[11] he can combine IRAs to satisfy the minimum distribution requirements under section 408(a)(6);[12] he can replace the custodian at any time;[13] he is

---

[10]    In a private letter ruling not cited by the Commissioner or the majority, the IRS decided long ago that the owner of S corporation shares in a custodial account is not the custodian or the account but the owner of the account.  Priv. Ltr. Rul. 80-10-028 (Dec. 11, 1979).  We don't rely on this ruling, since the Code forbids us from relying on private letter rulings as precedent, even those cited by both parties (and discussed briefly by the majority).  See sec. 6110(k)(3).

[11]    "The Depositor agrees to provide the Custodian with all information necessary to prepare any reports required by section 408(i) and Regulation sections 1.408-5 and 1.408-6."  Southwest Securities, Inc., Individual Retirement Custodial Account Agreement and Disclosure Statement (2002) (SWS), par. 5.01, http://www.wisconsindiscount.com/pdfs/IRAAgreement05_06.pdf. see also Fidelity Investments, Fidelity IRA and Roth IRA Custodial Agreements (2009) (Fidelity), art. V (IRA) and art. VI (Roth), http://personal.fidelity.com/accounts/pdf/custodials.pdf.

[12]    "The owner of two or more traditional IRAs may satisfy the minimum distribution requirements described above by taking from one traditional IRA the amount required to satisfy the requirement for another in accordance with the regulations under section 408(a)(6)."  SWS, par. 4.06; Fidelity, art. IV, par. 6 (IRA); TD AMERITRADE Clearing, Inc., Roth IRA Disclosure Statement & Custodial Agreement (2007) (Ameritrade) http://www.tdameritrade.com/forms/AMTD401.pdf, art. II.

[13]    "The Depositor may at any time remove the Custodian and replace the Custodian with a successor trustee or custodian of the Depositor's choice by giving 30 days notice of such removal
(continued...)

himself responsible for any fees, taxes and administrative expenses;[14] and he directs and controls the investments in the account.[15] Such agreements--while obviously not controlling here--at least suggest in their apparent uniformity that custodial-account IRAs would likely be found at trial to be under the control of their owners. It is hard to see how they could be considered "persons" of their own, instead of channels through which their owners direct and manage their investments.

And a longer look at the regulation shows that it doesn't make immediate taxability a defining characteristic of custodial accounts.[16] Instead, it makes the key characteristic the

---

[13](...continued)
and replacement." SWS, par. 8.04(b); Ameritrade, art. X.

[14] "All such fees, taxes, and other administrative expenses charged to the account shall be collected either from the assets in the account or from any contributions to or distributions from such account if not paid by the Depositor, but the Depositor shall be responsible for any deficiency." SWS, par. 8.05(c); Fidelity, art. IX, pars. 16, 18 (Roth); Ameritrade, 8.01(c).

[15] "At the direction of the Depositor * * * the Custodian shall invest all contributions to the account and earnings thereon in investments acceptable to the Custodian * * *. The Custodian shall have no duty other than to follow the written investment directions of the Depositor, and shall be under no duty to question said instructions and shall not be liable for any investment losses sustained by the Depositor." SWS, par. 9.01; Fidelity, art. IX, par. 2 (Roth); Ameritrade, art. VI.

[16] Another textual argument, though unmade by the Commissioner, is to play with the distinction in section 408(h) itself, which treats custodial IRAs as trusts "for purposes of *this section*" but their custodians as trustees "for purposes of *this title*." (Emphases added.) The Commissioner might have argued that, because section 1361 is part of "this title," then "custodian" in the regulation should be read to mean "trustee." Treating the custodian as a trustee (with its imposition by reference of recordkeeping duties like those found in section

(continued...)

beneficial enjoyment of the account.  And the regulation itself lists other entities or exempt organizations as eligible owners of S corporation stock.[17]

Indeed, the relationship between the custodian and the S corporation's stock was described by the leading treatise as the custodian's holding "nominal ownership" versus the owner of the account's "beneficial ownership."  See Eustice & Kuntz, Federal Income Taxation of S Corporations, par. 3.03[18], at 3-90 (Supp. 2 2009).  And the Commissioner has adopted that distinction when it suits him.  IRS Coordinated Issue Paper on S Corporation Tax Shelters, at 6 (Nov. 8, 2004) ("Because the exempt party appears to be simply a facilitator without beneficial ownership of the S

---

[16](...continued)
6047) does not, however, mean that the custodial account would become a trust.

The Secretary does know how to write regulations that would make that happen.  For example, section 401(f) (governing qualified pension and benefit plans) says that "For purposes of this title, in the case of a custodial account * * * the person holding the assets of such account * * * shall be treated as the trustee thereof."  But the regulation--section 1.401(f)-1(c)(1)(i), Income Tax Regs.--specifies that "Such a custodial account * * * is treated as a *separate legal person* which is *exempt from income tax under section 501(a).  In addition,* the person holding the assets of such account * * * is treated as the trustee thereof."  (Emphases added.)

[17]  The Secretary put this language into section 1.1361-1(e), Income Tax Regs. 1995.  See T.D. 8600, 1995-2 C.B. 135.  He revisited the language in 2002 (each potential current beneficiary of the ESBT is counted as a shareholder of any S corporation whose stock is owned by the ESBT, T.D. 8994, 2002-1 C.B. 1078; and less than a year ago (providing that the beneficiary of an ESBT or the beneficiary of an IRA are considered the S corporation shareholders, T.D. 9422, 2008-2 C.B. 898.

corporation stock, the exempt party generally should not be treated as a shareholder for purposes of the allocation of income.")[18]

So we have a regulation whose validity is unchallenged by either the majority or the Commissioner.[19] Nor does it seem possible that such a challenge could have succeeded under Chevron step one, which tells us to ask whether Congress "has directly spoken to the precise question at issue." Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). The majority concedes as much. See majority op. note 20. Chevron step two--whether the agency's solution is reasonable-- seems equally easy to climb: A focus on the beneficial ownership of stock under a custodian's control looks directly at who ultimately bears the benefits and risks of S corporation stock ownership[20] and gives us a reasonable answer to the question of

---

[18] Coordinated issue papers, like revenue rulings, are drafted by IRS attorneys and represent "'merely the opinion of a lawyer in the agency and must be accepted as such', and are 'not binding on the * * * courts.'" See N. Ind. Pub. Serv. Co. v. Commissioner, 105 T.C. 341, 350 (1995) (quoting Stubbs, Overbeck & Associates, Inc. v. United States, 445 F.2d 1142, 1146-47 (5th Cir. 1971)), affd. 115 F.3d 506 (7th Cir. 1997).

[19] The Ninth Circuit long ago upheld the pre-1995 version of the regulation, sec. 1.1371-1(d)(1), Income Tax Regs. Kean v. Commissioner, 469 F.2d 1183, 1187 (9th Cir. 1972), affg. in part and revg. in part 51 T.C. 337 (1968).

[20] See also Wilson v. Commissioner, 560 F.2d 687, 690 (5th Cir. 1977) ("Shareholders in close corporations generally have some role (however formal or minor) in corporate governance, bear a risk of corporate failure, and stand to share in corporate successes. The extent to which the individual in question exhibits these characteristics helps determine whether he is a beneficial shareholder."), affg. T.C. Memo. 1975-92, cited in

(continued...)

whether DiMundo can put his Taproot stock in a custodial-account IRA without triggering Taproot's transformation into a C corporation.

The dispute within our Court should have been on the meaning of the actual words of the regulation, but the majority shifts its focus to a set of authorities that can't help us in construing that language.

I tag along.

## II.

The majority's conclusion rests on old Revenue Ruling 92-73, rules relating to grantor trusts, congressional inaction in response to the IRS's continuing reliance on the revenue ruling in the PLRs it issues, and numerous statements by organizations hovering around Congress about the current state of the IRS's views on the subject.[21]  While consistent, these spotty indications are not controlling law but merely demonstrations that the authors of the PLRs haven't thought through the meaning of the 1995 regulation against a background of steady expansion in S-corporation shareowning eligibility.

---

[20](...continued)
Christian & Grant, Subchapter S Taxation, par. 14.04 (4th ed. 2000) ("Who Must Consent").

[21]  The majority admits "that no statute or regulation in effect during 2003 explicitly prohibited a traditional or a Roth IRA from owning S corporation stock."  See majority op. p. 11. It further argues that section 1.1361-1(h)(1)(vii), Income Tax Regs., effective Aug. 14, 2008, contains such an explicit prohibition.  As we shall explain, we do not think the 2004 amendment applies to IRAs in nonbank S corporations, and certainly not custodial IRAs, which are governed by section 1.1361-1(e), Income Tax Regs.

The three themes flowing through the majority opinion--deference to the revenue ruling and the Commissioner's continuing reliance on it, disagreement with any characterization of IRAs as grantor trusts, and such legislative history as exists, all spring from these authorities.

I will look at each.

A.

The majority packs most of its reasoning aboard Revenue Ruling 92-73, which cursorily held that IRAs couldn't be considered grantor trusts in determining their eligibility as S-corporation shareholders because the rules that apply to grantor trusts "are incompatible with the rules that apply to" IRAs.  Yet the revenue ruling answered a single question:  "Is a *trust* that qualifies as an individual retirement account under section 408(a) of the Internal Revenue Code a permitted shareholder of an S corporation under section 1361?"

The ruling reviewed Code section 1361(c)(2)(A)(i) and 1361(d)(1) and reasoned:

> A section 408(a) trust cannot also be a trust described in section 1361(c)(2)(A)(i) or a QSST treated as a trust described in section 1361(c)(2)(A)(i) because the rules that apply to a trust described in section 1361(c)(2)(A)(i) or QSST treated as such a trust are incompatible with the rules that apply to a section 408(a) trust.  Therefore, a section 408(a) trust cannot satisfy the rules applicable to a trust that is a permitted shareholder of an S corporation. (Emphases added).

This revenue ruling is much too weak a plank to bear the load the majority puts on it.  First and foremost, as emphasized above, the ruling is aimed at IRAs held as *trusts* governed by

section 408(a).  The account in our case is not a *trust*; it's a custodial account.  Custodial account IRAs are not "true trusts." <u>Walsh v. Galloway</u>, 308 Bankr. 709, 713-14 (Bankr. W.D. Pa. 2001) (section 408(a) limits the characterization of custodial-account IRAs as trusts to that section alone); see also *infra* p. 44.

B.

The majority's lengthy discussion, see majority op. pp. 14-18, of IRAs as grantor trusts is understandable in light of the Commissioner's own extended analysis along this line, and his refusal to engage in the regulatory analysis that Taproot did. (And to be fair, Taproot itself contributed to the misdirection by chasing the rabbit trail laid down by the Commissioner).[22]

The majority steers us to section 408(h) to lash custodial accounts and trusts together.  See majority op. pp. 8-9.  That section provides:

> SEC. 408(h).  Custodial accounts.--*For purposes of this section*, a custodial account shall be treated as a trust if the assets of such account are held by a bank (as defined in subsection (n)) or another person who demonstrates, to the satisfaction of the Secretary, that the manner in which he will administer the account will be consistent with the requirements of this section, and if the custodial account would, except for the fact that it is not a trust, constitute an individual retirement account described in subsection (a).  [Emphasis added.]

---

[22]  We note, without opining on its consequences, that the revenue ruling preceded by a few years Congress's 1996 and 1997 amendments to the S-corporation rules to provide that an employee stock ownership plan (ESOP) under section 401 could be a shareholder of an S corporation although the tax treatment of an ESOP beneficiary is equivalent to that of a traditional IRA owner, and the income of an ESOP is taxed under section 72 when distributed to the beneficiary just like an IRA's is.

The emphasized phrase confines section 408(h)'s equation of trusts and custodial accounts to section 408. Section 408 places limits on IRAs on rollover contributions, on who can be a custodian, on what assets can be held in them, on whether they can be forfeited, or on whether their assets can be commingled. Section 408(h) simply directs us to these other parts of section 408.

And we really should have spotted the obvious point that this revenue ruling--issued in 1992--is most unlikely to be helpful in deciding the meaning of a regulation issued three years later. Revenue rulings don't trump regulations. We thus agree with Taproot that Revenue Ruling 92-73's skimpy analysis, if relevant at all to this case, was overturned by the 1995 regulation and the Commissioner's later analysis of S-Corporation ownership eligibility for ESOPs. See Rev. Rul. 2003-27, 2003-1 C.B. 597.

## C.

What really seems to lead the majority to its conclusion is less the old revenue ruling and grantor-trust rules than its extensive consideration of public policy and what it concludes from the fact that "there is no indication that Congress ever intended to allow IRAs to own S-corporation stock." See majority op. p. 19. The majority first notes that IRAs are not explicitly listed in section 1361 as eligible S-corporation shareholders. This is true, but the Supreme Court has repeatedly warned that "congressional silence lacks persuasive significance." Brown v. Gardner, 513 U.S. 115, 121 (1994) (citation omitted); Wyeth v.

Levine, 555 U.S. \_\_\_, \_\_\_, 129 S. Ct. 1187, 1216 (2009) ("the relevance is * * * not in any inferences that the Court may draw from congressional silence about the motivations or policies underlying Congress' failure to act"); Rapanos v. United States, 547 U.S. 715, 749 (2006) (noting the Court's "oft-expressed skepticism towards reading the tea leaves of congressional inaction").

The majority next argues that "had Congress intended to render IRAs eligible S-corporation shareholders, it could have done so explicitly, as it has in the limited case of banks de-siring to elect S status." See majority op. p. 19. The major-ity's reference here is to section 1361(c)(2)(A)(vi), added to the Code in 2004 by the American Jobs Creation Act of 2004, Pub. L. 108-357, sec. 233(a), 118 Stat. 1434.[23] It makes trust IRAs eligible S corporation owners:

> (vi) In the case of a corporation which is a bank (as defined in section 581) or a depository institution holding company (as defined in section 3(w)(1) of the Federal Deposit Insurance Act (12 U.S.C. 1813 (w)(1)), a trust which constitutes an individual retirement account under section

_____

[23] Following this amendment, the Secretary added subdivision (vii) to section 1.1361-1(h)(1), Income Tax Regs. "In the case of a corporation which is a bank * * * a trust which constitutes an individual retirement account under section 408(a), including one designated as a Roth IRA under section 408A, but only to the extent of the stock held by such trust in such bank or company as of October 22, 2004. Individual retirement accounts (including Roth IRAs) are not otherwise eligible S corporation shareholders."

While not an issue discussed by the majority, note that the new regulation applies only to IRAs set up as trusts and may in context apply only to banks or bank holding companies organized as S corporations. In any event, it applies only prospectively, after the year involved here.

408(a), including one designated as a Roth IRA under section 408A, but only to the extent of the stock held by such trust in such bank or company as of the date of the enactment of this clause.

While we agree with the majority that the 2004 amendment was a "very narrow exception that allows IRAs to hold shares in S-corporation banks", see majority op. p. 20, we disagree with the majority about its significance as a window into the mind of Congress on the general eligibility of S-corporation shareholders to hold their stock in IRAs. First, the amendment had an exceptionally narrow focus. It was limited to trusts and did not include custodial accounts like DiMundo's IRA. And its narrow focus matched the narrow problem it was aimed at--existing shareholders of small banks who held their stock in IRAs. Even when Congress amends parts of a statute, the Supreme Court has warned us that "as a general matter * * * [the] arguments [of congressional inaction] deserve little weight in the interpretive process." Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 187 (1994). And the narrow focus of Congress's attention should make us even more cautious--"when, as here, Congress has not comprehensively revised a statutory scheme but has made only isolated amendments, we have spoken more bluntly: 'It is "impossible to assert with any degree of assurance that congressional failure to act represents" affirmative congressional approval of the Court's statutory interpretation.'" Patterson v. McLean Credit Union, 491 U.S. 164, 175, n.1 (1989) (quoting Johnson v. Transp. Agency, Santa Clara County, 480 U.S. 616, 671-72 (1987) (Scalia, J., dissenting).

The GAO report quoted so extensively by both the Commissioner and the majority only adds more ballast to my emphasis on the narrowness of this problem--the impact of the old law on community banks.  The amendment was simply a specific solution offered to a particular problem, itself a consequence of a long-time ban on banks' being allowed to organize as S corporations that Congress didn't lift until 1996.[24]

After 1996, banks faced a costly and complicated process to convert from being a C to an S corporation if they had employees who had tucked their shares into IRAs.  The chairman of the Independent Community Bankers of America (ICBA) described the obstacles:

> IRAs often hold significant portions of bank stock, thereby limiting banks' ability to elect S Corporation status.  In many cases, banks find it virtually impossible to eliminate the significant amount of stock owned by IRAs due to capital constraints.
>
> \*    \*    \*    \*    \*    \*    \*
>
> \* \* \* [T]he owner of the IRA is a disqualified party and is prohibited from purchasing the community bank's stock from the IRA. \* \* \*  IRAs that participate in prohibited transactions taint the entire fund and the tax exemption is lost. The account ceases to be an IRA on the first day of the taxable year in which the prohibited transaction occurs . . . .  The Department of Labor has granted exemptions, on a case-by-case basis, from the prohibited transaction rules when the IRA wanted to sell stock to a disqualified party. However, applications must be submitted for each individual case and are time consuming and expensive.
>
> ICBA recommends allowing owners of IRAs holding the stock of a community bank making the S Corporation election

---

[24]    Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1315, 110 Stat. 1785 (amending sec. 1361(b)(2)(A)). Before this Act, banks couldn't be S corporations.

to purchase the subject securities from the IRAs.  This can be accomplished by amending IRC §4975 or IRC §408 to alleviate the penalty associated with an IRA selling one of its assets to its owner.

Hearing on S Corporation Reforms Before the Subcomm. on Select Revenue Measures of the House Comm. on Ways and Means, 108th Cong., 1st Sess. 41-42 (2003) (statement of C.R. "Rusty" Cloutier, President and Chief Executive Officer, MidSouth Bank, Chairman of the Independent Community Bankers of America) (fn. refs. omitted).

The GAO focused on this problem and consulted legal and accounting experts, Treasury officials, and others solely on the cost and delays of eliminating IRA shareholders when a bank converted to S status.  And while the GAO's Report did note "IRAs are not eligible to be S-corporation shareholders under present law,"[25] GAO Report, app. IV at 47, nowhere did it cite any authority for this contention (though it's reasonable to assume it had Revenue Ruling 92-73 in mind).

The Secretary responded to the GAO study in a short letter. He referred to "a series of proposals related to banks organized as S corporations" and commented that his discussion was limited to the particular subject of the potential impact of the proposal on community banks.  He then went on to address the specific problem:

> The prohibition of IRAs as shareholders also creates difficulties only for banks that had been previously organized as C corporations. * * *  It is important to emphasize in the text of the report that a substantial

---

[25]    GAO Rep. at 47.

number of banks are already operating as S corporations, and therefore have presumably not found these provisions, which are necessary in our view for the reasons discussed above, insurmountable.

GAO Rep. at 61.

The most interesting part of Treasury's response is its suggestion that the real problem with S corporation shareholders' putting their stocks in IRAs was the possibility that the corporation's operating profit might go untaxed for quite a while:

Treasury officials generally opposed this proposal because permitting IRAs to hold shares in S corporation banks would create untaxed income for a potentially long period of time. * * *

Id. at 6-7.

* * * * * * *

Treasury indicated that if IRAs were allowed to be S corporation shareholders, from a policy standpoint, the Unrelated Business Income Tax should be imposed, which parallels similar tax treatment of other pension funds.

Id. app. IV, at 49.

The Deputy Assistant Treasury Secretary for Tax Policy repeated those concerns:

Our support, however, is explicitly conditioned on the S Corporation income earned in the IRA being treated as unrelated business taxable income. We are concerned that, if enacted, subsequent efforts will be made that would make such income not subject to UBIT (as was done in the case of ESOPs), thus eliminating any and all tax on such income.

Hearings, supra at 19 (statement of Gregory F. Jenner, Deputy Assistant Secretary for Tax Policy, U.S. Department of the Treasury).

Since the 2004 amendment, several Congressmen have introduced bills to allow S-corporation stock to be held in IRAs of

all types.  The majority, see majority op. note 25, cites the failure of these efforts as additional support for inferring a prohibition on owning S corporation stock in IRAs.

But asking why Congress hasn't amended the Code to reverse Revenue Ruling 92-73 isn't the right way to look at the problem. In a system like tax law, so heavily dependent on regulations to fill the inevitable gaps, the right questions are what does a regulation mean and does it stay within the boundaries marked out in the Code.  Chevron doesn't tell us to ask why Congress didn't do what the regulation does; it tells us to ask whether the regulation is valid as a reasonable interpretation of an ambiguity in the Code.  Redlark v. Commissioner, 141 F.3d 936, 939 (9th Cir. 1998), revg. 106 T.C. 31 (1996); Swallows Holding, Ltd. v. Commissioner, 126 T.C. 96, 157 (2006) (Halpern, J. dissenting), vacated 515 F.3d 162 (3d Cir. 2008).  Here, the ambiguous term in the Code is "individual" in section 1361(b)(1)(B) and, as explained above, the regulation is a perfectly reasonable construction of that term.  If, as also explained above, a custodial account is not a person, but a way a person can own property, then the regulation as applied certainly allows DiMundo to hold his stock in a custodial account, even an IRA.

The majority's approach also veers toward relying on the doctrine of legislative reenactment, when it argues that Congress has to have been aware of the IRS's revenue ruling and PLRs but chose not to amend the Code in response.  Yet there is no evidence that Congress knew of any Code section or regulation or

revenue ruling or even PLR on this matter.  This should have started caution flags fluttering.  "The re-enactment doctrine * * * is most useful in situations where there is some indication that Congress noted or considered the regulations in effect at the time of its action.  Otherwise, the doctrine may be as doubtful as the silence of the statutes and legislative history to which it is applied."  Peoples Fed. Sav. & Loan Association v. Commissioner, 948 F.2d 289, 302-03 (6th Cir. 1991), revg. T.C. Memo. 1990-129.

### III.

But there remain two questions that seem to really trouble the majority:  Why is it only now that anyone is making this argument?  And wouldn't the system fall apart if people could hold S corporation shares in their IRAs?

### A.

Whenever a novel legal argument about an old law is pro-posed, a prudent judge should ask why no one's ever thought of it before.  But whatever presumption of incorrectness novelty must bear, it can't be a complete bar.[26]

---

[26]  "Two University of Chicago Nobel laureates walking down a campus sidewalk.  One says to the other, 'There's a $20-bill on the sidewalk in front of you.'  Without looking down, the other laureate retorts, 'No there isn't.'  To which the first laureate says in some frustration, 'Well, look down.  It's right there!'  The second laureate then closes off the debate * * *  'There couldn't be.  If there were a $20-bill on the sidewalk, someone would have picked it up.'" McKenzie, Book Overview:  A Defense of Rational Behavior in Economics, ch. 1, at 3 (Merage School of Business, Univ. of Cal., Irvine (under development in 2008) (but based on a long oral tradition).  On the hazards of picking up money from sidewalks, see generally Roberts v. State, 12 P.2d 701

(continued...)

And there's a reasonable explanation for no one's having raised the argument till now. To understand it, consider the question's chronology:

1958--Subchapter S corporations put in the Code--ownership limited to individuals and estates[27]

1966--Revenue Rulings 65-90 and 66-266 allow minors or others under disabilities, whose property is held in custodial accounts or by estates, to be eligible S-corporation shareholders[28]

1974--Traditional IRAs put in the Code[29]

1976--Grantor trusts allowed to be S-corporation shareholders[30]

1992--Revenue Ruling 92-73 holds that an IRA held by a trust is not a trust eligible to be an S-corporation shareholder[31]

1995--Section 1.1361-1(e)(1), Income Tax Regs., is issued.[32]

---

[26](...continued)
(Okla. Crim. App. 1931); <u>Atkinson v. Birmingham</u>, 116 A. 205 (R.I. 1922).

[27]    Former secs. 1371-1377 were first added to the Code by the Technical Amendments Act of 1958, Pub. L. 85-866, sec. 64, 72 Stat. 1650.

[28]    Revenue Rulings 65-90, 1965-1 C.B. 428, and 66-266, 1966-2 C.B. 356.

[29]    Employee Retirement Income Security Act of 1974, Pub. L. 93-406, sec. 2002(b), 88 Stat. 959. Sept. 2, 1974.

[30]    Tax Reform Act of 1976, Pub. L. 94-455, sec. 902(c)(2)(A), 90 Stat. 1609.

[31]    Revenue Ruling 92-73, 1992-2 C.B. 224.

[32]    T.D. 8600, 1995-2 C.B. 135, (July 21, 1995). Former section 1.1371-1(d)(1), Income Tax Regs., issued under former Code section 1371, provided that partnerships and trusts and not their partners or beneficiaries were treated as the shareholders. In 1995, the Secretary changed position and promulgated section 1.1361-1, Income Tax Regs., partially allowing more flexible S-
(continued...)

1996--Banks are allowed to be organized as S corporations[33]

1997--Roth IRAs are put in the Code[34]

2004 -- IRAs already owning shares in banks converting to S corporation status are expressly made eligible shareholders.[35]

This is a history of adhocery--Congress and the IRS finding solutions to new problems in the area as they arose. What makes the 1995 regulation so significant is that it marked the first time that the Secretary chose to stop tweaking the list of eligible S-corporation shareholders, and instead set up a general principle for dealing with a class of situations where various

_____

[32](...continued)
corporation ownership and possession. The Secretary put some extra thought into this. When first proposed, the regulation provided that in the case of a partnership "the partnership (and not its partners) is considered to be the shareholder and the corporation does not qualify as a small business corporation." Following comments that questioned why stock held by a partnership as nominee could not be considered to be owned by the beneficiary, the Secretary reversed course and the final regulations provided that the person for whom a partnership holds S-corporation stock will be treated as the shareholder. T.D. 8600, 1995-2 C.B. at 136 (July 21, 1995). His explanation for including partnerships on the list of eligible shareholders, particularly when other flowthru entities were also added over the years, suggests that preserving the "tax dynamics" of S-corporation distributions, see Halpern, J. concurring op. note 1, was not his primary goal.

[33] Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1315, 110 Stat. 1785 (amending sec. 1361(b)(2)(A)).

[34] Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 302(a), 111 Stat. 825.

[35] The American Jobs Creation Act of 2004, Pub. L. 108-357, sec. 233(a), 118 Stat. 1434, added that provision to sec. 1361(c)(2)(A).

entities exercised different attributes of ownership--title, possession, etc.

The problem is that the parts of the IRS overseeing IRA law don't seem to have noticed this turn taken by the parts of the IRS overseeing S-corporation law. Treatise writers have noticed, but have nevertheless cautioned tax planners against taking the risk of challenging the Service, given the stakes involved. See Eustice & Kuntz, supra par. 3.03[9]; Blau et al., 1 S Corporations Federal Taxation par. 3.30 (2009). One can understand this caution--having even one ineligible shareholder triggers revocation of S-corporation status, sec. 1361(b)(1), with its immediate imposition of a second layer of taxation on profit distributions to the shareholders. This makes the absence of precedent on the question understandable--for a corporation that has shareholders who have put their stock in an IRA, electing S-Corporation status could trigger excise tax on excess contributions, sec. 4973; penalties on prohibited transactions, sec. 4975; and a tax on distributions from the affected corporation that will apply to all its shareholders.

## B.

There is, finally, the objection that by allowing S-corporation stock to be held in tax-deferred or tax-exempt IRA accounts, "tax alchemy in a free enterprise business context could be achieved. This would grant an overwhelming competitive tax benefit to a Roth IRA-owned business compared to a C corporation competitor who is subject to two levels of tax--one at the cor-

porate level and another at the shareholder level." See majority op. note 18. But this underestimates the strengths of the Code's other defenses against such shenanigans. There are numerous limitations on what can go in and out of an IRA--income-contribution limits, sec. 219; deadlines for contributions, sec. 219; penalties on prohibited transactions, sec. 4975; penalties on excess contributions, sec. 4973; etc.[36] But even more importantly, while custodial retirement accounts are generally exempt from tax on undistributed IRA income, they are still "subject to the taxes imposed by section 511 (relating to imposition of tax on unrelated business income of charitable, etc. organizations)." Sec. 408(e)(1).

It's UBIT, not the revocation of S-corporation status, that plugs any loophole. While IRAs normally may hold a variety of investments including cash, stocks, and bonds, they are exempt from tax on income derived from such investments. This cluster of Taproot-like cases all seem to feature investments such as real-estate and other small businesses that would generate UBIT. See sec. 512(a)(1); see also supra note 9.

That is certainly what seems to have been happening in this case and the two related to it. The oral settlement in DiMundo v. Commissioner, docket No. 15395-07, included DiMundo's conces-

---

[36] Ignoring such constraints is presumably what led the Commissioner to consider some schemes involving S corporations and ESOPs to be abusive tax transactions under section 409(p). The Secretary made them "listed transactions" under the tax shelter regulations, including its disclosure requirements. See Notice 2004-8, 2004-1 C.B. 333 (Jan. 26, 2004).

sion of the penalty owed for making excess contributions to an IRA under section 4973, as well as his concession that he received nearly a million dollars in unreported taxable dividends from the operating business standing in back of Taproot that flowed into his custodial account.  It really would be tax alchemy if such operating profits went untaxed in an IRA.  But the solution is what the parties came up with here--a recognition that whether taxed as unrelated income or deemed dividends, the income would nevertheless be taxed.

They did have $8,549 of what they called interest left over, and stipulated to the Court that resolution of this summary-judgment motion would govern whether that trickle of an income stream would be taxed as C-corporation income or flow through to DiMundo's Roth IRA.  The practical effect of ruling against the government here would likewise be much smaller than the majority fears, given the breadth of the income that is subject to UBIT. 7 Fed. Tax Coordinator 2d (RIA), pars. D-6916.1, D-6901 (2009) (characterization of the income and loss from S corporation to tax-exempt organization as unrelated business income applies regardless of the nature of such income.)

This case is a reminder that tax law does not cascade into the real world through a single channel.  It meanders instead through a vast delta, and any general principles tugged along by its current are just as likely to sink in the braided and re-braided rivulets of specific Code provisions and the murk of regulations as they are to survive and be useful in deciding real

cases.  Taproot thinks it found a course through the confluence of the subchapter S and IRA rules that it could successfully navigate.  Its route would be new, but the stakes are not that great, and the sky will remain standing if we had just read and applied the regulation as it is.

I respectfully dissent.

FOLEY, KROUPA, and MORRISON, <u>JJ</u>., agree with this dissenting opinion.