ESTATE OF ARTHUR E. SCHAEFER, DECEASED, KATHLEEN J. WELLS, EXECUTOR, PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13183–11.　　　　Filed July 28, 2015.

During his life decedent (D) established two irrevocable charitable remainder trusts. Each trust was designed so that one of D's sons would receive distributions during his life or a term of years with the remainder going to a charity. The trust instruments directed the trustees to distribute the lesser of each trust's annual income or a fixed percentage to one of the sons. If trust income exceeded the fixed percentage, the trustee was directed to make additional distributions to make up for previous years when the trust income did not yield enough to satisfy a distribution of the fixed percentage. The estate (E) claims it is entitled to a charitable contribution deduction for the values of the charitable remainder interests of the two irrevocable trusts D created. For E to be eligible for the deduction, the value of each remainder interest must

134

be at least 10% of the net fair market value of the property contributed to the trust at the time of contribution. I.R.C. sec. 664(d)(2)(D). The parties disagree about the appropriate distribution amount to use in calculating the values of the charitable remainder interests. *Held*: Where the trust payout is the lesser of the trust income or a fixed percentage, the parties must use an annual distribution amount equal to the fixed percentage stated in the trust instrument to determine whether E is eligible for the charitable contribution deduction. I.R.C. sec. 664(e).

*Robert J. Onda*, for petitioner.
*Richard J. Hassebrock* and *Emily J. Giometti*, for respondent.

## OPINION

BUCH, *Judge*: This case involves an estate that seeks a charitable contribution deduction for the values of remainder interests in two charitable remainder trusts created during the decedent's life. Each trust instrument states that the trustee must make distributions to the noncharitable beneficiary of the lesser of the net trust accounting income for the taxable year and a fixed percentage of the net fair market value of the trust assets, valued annually. Each trust instrument also allows the trustee to make additional distributions, limited to trust income, if previous distributions did not equal the fixed percentage. For each trust to qualify as a charitable remainder trust, thereby making the estate eligible for the deduction, the value of the remainder interest must be at least 10% of the net fair market value of the property contributed. Sec. 664(d)(2). [1] Respondent argues that the value of the remainder interest for each trust does not equal 10% because the parties should use the fixed percentage in calculating the values of the distributions. The estate disagrees and argues that the parties should calculate the distributions using the expected net income according to the applicable section 7520 rate so long as the rate is above 5%. We hold that the parties must calculate the value of the remainder interest for each trust using a distribution amount equal to the fixed percentage.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

*Background*

This case was submitted without trial under Rule 122.

Arthur Schaefer was born on August 19, 1908, and had two sons, Ronald and Benjamin. In November 2004 Mr. Schaefer formed AES Family Limited Partnership (AES). Initially, Mr. Schaefer held 10,000 trust certificates or units, which represented all of the units that AES issued pursuant to its trust agreement. That same month, Mr. Schaefer transferred to each of Benjamin and Ronald 3.83% of his trust certificates in AES. Mr. Schaefer retained the remaining 92.34%. Mr. Schaefer reported the transfers as gifts on his 2004 Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return.

Mr. Schaefer formed Schaefer Investment, LLC (Schaefer LLC), on February 21, 2006. When he formed Schaefer LLC, Mr. Schaefer owned a 100% interest in it, which consisted of 990 nonvoting units and 10 voting units. He transferred to Schaefer LLC his remaining trust certificates in AES and a money market checking account.

Also on February 21, 2006, Mr. Schaefer created two trusts: Arthur E. Schaefer Charitable Remainder Unitrust Number 1 (Trust 1) and Arthur E. Schaefer Charitable Remainder Unitrust Number 2 (Trust 2). Mr. Schaefer transferred a 49.5% nonvoting interest in Schaefer LLC into Trust 1 and a 49.5% nonvoting interest in Schaefer LLC into Trust 2. During his lifetime Mr. Schaefer was the income beneficiary of both trusts. Upon his death Ronald became the income beneficiary of Trust 1 and Benjamin became the income beneficiary of Trust 2.

The trust agreements provide for distributions to the income beneficiaries during the "Unitrust Period" payable in quarterly installments. The payments equal the lesser of the net trust accounting income for the taxable year or a percentage, 11% for Trust 1 and 10% for Trust 2, of the net fair market value of the trust assets, valued annually. The Unitrust Period for each trust starts on the first day property is transferred into the trust and ends on the date preceding the date of the death of the last income beneficiary or 20 years from the first date of the Unitrust Period, whichever is later. At the end of the Unitrust Period the remainder of

the principal and income in each trust is to be distributed to a charitable organization.

Mr. Schaefer died in Wisconsin on March 9, 2007. The Internal Revenue Service (IRS) received a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, from the estate on April 16, 2008. The estate did not claim a charitable contribution deduction for any portion of the trusts. Instead, the estate reduced the amounts reported on Schedule G, Transfers During Decedent's Life, by the amounts it deemed to be charitable. Subsequently, the IRS audited the estate tax return.

The IRS mailed a notice of deficiency making various adjustments to the estate of Mr. Schaefer on March 7, 2011. The adjustment that we are asked to address here is an adjustment to the amounts of transfers during Mr. Schaefer's life based on increases in the values of the trusts. The IRS explained its position in the notice, stating that the estate was not allowed a charitable contribution deduction for the values of the remainder interests of the trusts because the trusts did not meet the requirement that the value of the charitable remainder interest be at least 10% of the net fair market value of the property on the date of contribution and the estate had not shown any other basis upon which the charitable remainder interests in the trusts should be discounted. The executor of the estate, while living and probating Mr. Schaefer's estate in Wisconsin, timely petitioned.

This case was scheduled for trial during the Court's trial session beginning June 3, 2013, in Columbus, Ohio. When the case was to be heard, the parties orally moved to submit the case fully stipulated under Rule 122. The parties also filed a stipulation of facts, a first supplement to stipulation of facts, a stipulation of settled issues, and a first supplement to stipulation of settled issues. After the stipulations the only remaining issue is whether the trusts meet the requirement of section 664(d)(2)(D) that the value of each charitable remainder interest be at least 10% of the net fair market value of the property on the date of contribution. If not, then the estate is not entitled to a charitable contribution deduction. The parties agree that the estate is not entitled to the charitable contribution deduction if the values of the charitable remainder interests in Trust 1 and Trust 2 are calculated on the basis that 11% or 10%, respectively, of the net

fair market value of the assets is distributed each year. However, the parties also agree that the estate is entitled to the charitable contribution deduction if the values of the charitable remainder interests are calculated on the basis that an amount equal to each trust's net income, determined using the section 7520 rate, is distributed each year.

Neither party addressed on brief whether section 664(e) requires that a 5% distribution rate be used when valuing the remainder interest of a trust such as the ones before us. Accordingly, by order dated April 1, 2015, the Court directed the parties to file legal memoranda addressing this issue. Both parties timely filed legal memoranda and, in large part, simply reiterated their original arguments.

## *Discussion*

### I. *Charitable Remainder Trust*

Generally, when calculating the estate tax imposed under section 2001, a deduction is allowed from the value of the gross estate for transfers for charitable purposes. Sec. 2055(a). This general rule is restricted for split-interest transfers, where an interest in property passes to a charitable beneficiary while an interest in the same property also passes to a noncharitable beneficiary for less than full and adequate consideration. Sec. 2055(e)(2). If the charitable organization receives the remainder interest in the property, no deduction is allowed unless the charitable organization's interest is in a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund. Sec. 2055(e)(2)(A). Before Congress enacted the Tax Reform Act of 1969 (TRA '69), Pub. L. No. 91–172, 83 Stat. 487, an estate could deduct the value of a charitable remainder interest if the value of the remainder interest was presently ascertainable and the possibility that the charitable transfer would not become effective was so remote as to be negligible. Sec. 20.2055–2(a) and (b), Estate Tax Regs. Concerned about perceived abuses, Congress added section 2055(e)(2)(A), TRA '69 sec. 201(d)(1), 83 Stat. at 560, to remove any "incentive to favor the income beneficiary over the remainder beneficiary by means of manipulating the trust's investments", H.R. Rept. No. 91–413 (Part 1), at 59 (1969), 1969–3 C.B. 200, 238; S. Rept. No. 91–552, at 88 (1969), 1969–3 C.B. 423, 480.

## II. *Charitable Remainder Unitrust (CRUT)*

Section 664, also added by TRA '69 sec. 201(e)(1), 83 Stat. at 562, defines a CRUT. A CRUT has two types of beneficiaries: an income beneficiary and a remainder beneficiary. Generally, an income beneficiary is limited to distributions from the CRUT of a fixed percentage of the net fair market value of its assets, at least annually, for a term of years or for the lifetime of the income beneficiary. Sec. 664(d)(2)(A) and (B). After the period for these payments ends, the remainder beneficiary, which in the case of a CRUT will be a charitable organization, receives what remains. Sec. 664(d)(2)(C). Additionally, with respect to each property contribution to the CRUT, the value of the remainder interest in the property (determined under section 7520) must be at least 10% of the property's net fair market value on the date of contribution. Sec. 664(d)(2)(D).

Section 664(d)(3)(A) provides an exception that allows the trust instrument to provide that the trustee must distribute to the income beneficiary only the trust income for the year but limited by the fixed percentage. Trusts created under this exception are called net income charitable remainder unitrusts (NICRUTs). Additionally, section 664(d)(3)(B) allows the trust instrument to provide that the trustee must distribute to the income beneficiary the current trust income in excess of the fixed percentage to the extent that the aggregate amounts distributed in prior years are less than the aggregate of the fixed percentage amounts for those prior years. Trusts using this provision are net income with makeup charitable remainder unitrusts (NIMCRUTs). The trusts Mr. Schaefer created for his sons are NIMCRUTs.

Section 664(e) describes how to value a charitable remainder interest. It provides: "For purposes of determining the amount of any charitable contribution, the remainder interest of a * * * [CRUT] shall be computed on the basis that an amount equal to 5 percent of the net fair market value of its assets (or a greater amount, if required under the terms of the trust instrument) is to be distributed each year." *Id.* How one computes the value of the remainder interest is important because, as stated previously, the value of the remainder interest in the contributed property, calculated under section 664(e), must be at least 10% of the property's

net fair market value on the date of contribution. Sec. 664(d)(2)(D). The regulations provide that the charitable remainder interest is computed using the life contingencies for those involved, the section 7520 interest rate, and the assumption that the fixed percentage is distributed in accordance with the payout sequence of the trust. Sec. 1.664–4(a), Income Tax Regs. The fixed percentage "may be expressed either as a fraction or as a percentage and must be payable each year" beginning the first year of the charitable remainder trust until either the income beneficiary dies or a term of years, not to exceed 20 years, ends. Sec. 1.664–3(a)(1)(ii), (5)(i), Income Tax Regs. "A percentage is fixed if the percentage is the same either as to each recipient or as to the total percentage payable each year of such period." *Id.* para. (a)(1)(ii).

The parties disagree whether the regulations expressly address how to take into account distributions from a NIMCRUT when valuing the remainder interest. Respondent points to section 1.664–4(a)(3), Income Tax Regs., which would have one assume that the fixed percentage is distributed (implicitly without regard to the net income limitation in the case of a NIMCRUT). That regulation cross-references section 1.664–3(a)(1)(i)(*a*), Income Tax Regs., which sets forth the general rule for CRUT distributions. The estate argues that NIMCRUT distributions are determined not under this rule but under an exception to this rule. *See id.* subdiv. (i)(*b*). Independent of the regulations, the IRS has issued administrative guidance on the subject of valuing a remainder interest in a NIMCRUT. *See* Rev. Rul. 72–395, sec. 7.01, 1972–2 C.B. 340, 349–350; Rev. Proc. 2005–54, sec. 6.09, 2005–2 C.B. 353, 363. That administrative guidance asserts that the remainder interest of a NIMCRUT is valued using the fixed percentage stated in the trust instrument, regardless of the fact that distributions are limited to trust income.

III. *Analysis*

The parties present two different approaches to value the remainder interests of the trusts. The estate argues that in valuing the remainder interest the distributions are calculated by using the section 7520 rate to determine the trust's expected income, so long as the section 7520 rate is

above 5% of the net fair market value of the assets. Respondent argues that the remainder interest is valued using a distribution rate equal to the fixed percentage in the trust instrument. We asked the parties to address another approach—valuing the remainder interest using a 5% distribution rate.

Each approach is arguably flawed. Although the estate's approach yields a remainder interest value that is possibly closer to what the charitable beneficiary will ultimately receive, there is no basis for this approach in the statute. Respondent's approach potentially undervalues the remainder interest that will pass to the charitable beneficiary because it assumes the maximum distribution by using the fixed percentage, even though that amount can be distributed only if the trust produces sufficient income. And a 5% distribution rate potentially overvalues the remainder interest that will pass to the charitable beneficiary because if the trust produces income leading to distributions higher than 5%, the charitable beneficiary receives less than projected. Nevertheless, our task is not to look to the varying results and choose the best answer. Instead, we interpret the statute to the best of our ability, looking beyond it if necessary.

The role of legislative history in statutory interpretation is a topic of constant discussion among courts. The Court of Appeals for the Seventh Circuit [2] has cautioned that "[l]egislative history helps us learn what Congress meant by what it said, but it is not a source of legal rules competing with those found in the U.S. Code." *In re Sinclair*, 870 F.2d 1340, 1344 (7th Cir. 1989). And we have said: "It is well settled that where a statute is ambiguous, we may look to legislative history to ascertain its meaning." *Caltex Oil Venture v. Commissioner*, 138 T.C. 18, 34 (2012) (citing *Burlington N. R.R. v. Okla. Tax Comm'n*, 481 U.S. 454, 461 (1987)).

We find that the text of section 664(e) is ambiguous. Section 664(d)(1) and (2) defines both charitable remainder annuity trusts (CRATs) and CRUTs. In the case of a CRAT, the trust must distribute "a sum certain" that is not less than 5% and not more than 50% of the initial net fair market

---

[2] Absent a stipulation to the contrary, an appeal of this case would lie to the Court of Appeals for the Seventh Circuit. *See* sec. 7482(b)(1)(A).

value of the property placed in the trust. Sec. 664(d)(1)(A). In contrast, a CRUT must distribute a "fixed percentage" of at least 5% but not more than 50% of the net fair market value of its assets, valued annually. Sec. 664(d)(2)(A). Although these rules set forth different ways of expressing the distribution (sum certain and fixed percentage), section 664(e) provides instructions regarding how to calculate the remainder interest in either a CRAT or a CRUT. And in describing the distribution to be taken into account for valuation purposes, it does not expressly use the words "sum certain" or "fixed percentage". Instead section 664(e) provides that a distribution rate "equal to 5 percent of the net fair market value of its assets (or a greater amount, if required under the terms of the trust instrument)" is to be used. We are unable to determine on its face whether this provision means the sum certain (in the case of a CRAT) or the fixed percentage (in the case of a CRUT) or whether it means something different. To help resolve this ambiguity, we look to the legislative history.

Section 664(e), which governs valuing a remainder interest in a CRAT or a CRUT, was enacted as part of TRA '69. The underlying House bill containing the provisions for CRATs and CRUTs did not include a provision allowing for distributions to be limited to net income. H.R. 13270, 91st Cong., sec. 201 (1969) (as passed by the House, Aug. 7, 1969). A Senate amendment included both section 664(d)(3), which allowed for distributions to be limited to net income, and subsection (e), which provided for valuing the remainder interest of the trust. Although the statutory text may be ambiguous as to how to value the remainder interest in a CRUT with a net income provision, the Senate report, describing the Senate amendment, could not be clearer.

> A second modification of the annuity trust and unitrust rules made by the committee provides that the charitable remainder trust must be required by the trust instrument to distribute each year 5 percent of the net fair market value of its assets (valued annually in the case of a unitrust and valued at the time of the contribution in the case of an annuity trust) or the amount of the trust income, whichever is lower. In valuing the amount of a charitable contributions deduction in the case of a remainder interest given to charity in the form of an annuity trust or a unitrust, it is to be computed on the basis that the income beneficiary of the trust will receive each year the *higher* of 5 percent of the net fair market value of the trust assets or the payment provided for in

the trust instrument. * * * [S. Rept. No. 91–552, *supra* at 89–90, 1969–3 C.B. at 481; emphasis added.]

The Senate report makes clear that where there is a net income provision, the distribution amount or rate set forth in the trust instrument is to be used for valuation purposes even though distributions may be limited by net income.

The regulations are less clear. The regulation addressing how to value the remainder interest in a CRUT, section 1.664–4(a)(3), Income Tax Regs., contains an explicit cross-reference to distributions determined under section 1.664–3(a)(1)(i)(*a*), Income Tax Regs. But NIMCRUT distributions are described under an exception to that regulation. *Id.* subdiv. (i)(*b*). Given the ambiguity of the regulation, we turn to other administrative guidance.

The IRS' administrative guidance is wholly consistent with this legislative history. The IRS has issued both a revenue ruling and a revenue procedure describing how to value the remainder interest in a CRUT with a net income provision. Rev. Rul. 72–395, sec. 7.01, 1972–2 C.B. at 349–350, provides a sample trust provision that is very similar to the provisions before us, in that it provides that the trustee shall pay the lesser of the trust income from the taxable year or a fixed percentage of the net fair market value of the trust assets. The sample provision also allows the trustee to make catchup distributions for past years when the trust income was less than the fixed percentage. *Id.* The revenue ruling goes on to explain that "notwithstanding the * * * [net income makeup provision], the computation of the charitable deduction will be determined on the basis that the regular unitrust amount will be distributed in each taxable year of the trust." *Id.* at 350. Similarly, Rev. Proc. 2005–54, sec. 6.09, 2005–2 C.B. at 363, states: "For purposes of determining the amount of the charitable contribution, the remainder interest is computed on the basis that an amount equal to the fixed percentage unitrust amount is to be distributed each year, without regard to the possibility that a smaller or larger amount of trust income may be the amount distributed."

We are not bound by revenue rulings or procedures. *Taproot Admin. Servs., Inc. v. Commissioner*, 133 T.C. 202, 208–209 (2009), *aff'd*, 679 F.3d 1109 (9th Cir. 2012); *Casanova Co. v. Commissioner*, 87 T.C. 214, 223 (1986). They are

simply statements of the Commissioner's administrative and litigating positions. But we do owe them the appropriate level of deference. Under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), we determine whether the Commissioner's rulings and pronouncements may have the "power to persuade" by looking to "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements".

Particularly in the light of the legislative history previously discussed, we find the Commissioner's guidance to be persuasive. Both pieces of guidance are thoroughly reasoned, providing examples and explanations based on the applicable provisions. Additionally, the guidance has withstood the test of time. Rev. Rul. 72–395, *supra*, has been in effect for over four decades without any change to the provision before us. Further, Rev. Proc. 2005–54, *supra*, reaffirmed that reasoning when it was published some 30 years later. The Commissioner's position also has remained consistent and has been the subject of little litigation.

IV. *Conclusion*

Section 664(e) is ambiguous in its description of how to value a remainder interest in a NIMCRUT where actual distributions will be the lesser of a fixed percentage or net income. Where the statute is ambiguous, we can look to legislative history as an aid in the interpretation of the statute. And where a statute is ambiguous, the administrative agency can fill gaps with administrative guidance to which we owe the level of deference appropriate under the circumstances. With regard to the statute before us, the legislative history and the administrative guidance point us to only one conclusion—that the value of the remainder interest of a NIMCRUT must be calculated using the greater of 5% or the fixed percentage stated in the trust instrument. Accordingly, the estate must use an annual distribution amount of 11% or 10% of the net fair market value of the trust assets when valuing the remainder interests of Trust 1 and Trust 2, respectively. Because the parties have previously stipulated that the estate would not be entitled to a charitable contribution deduction if the remainder interests are valued using

this method, respondent's determination denying the charitable contribution deduction is sustained.

To reflect the foregoing,

*Decision will be entered under Rule 155.*